[Civ. No. 58796. Second Dist., Div. One. Oct. 30, 1980.]

MICHAEL R. YOUNAN, Plaintiff and Appellant, v.
EQUIFAX INC., et al., Defendants and Respondents.

COUNSEL

G. Dana Hobart for Plaintiff and Appellant.

Cosgrove, Cramer, Rindge & Barnum, J. D. Barnum and L. P. McElhaney for Defendants and Respondents.

OPINION

**ROBERSON, J.\*—**

I

INTRODUCTION

Appellant Michael R. Younan (hereinafter referred to as plaintiff), appeals from an order of the superior court dismissing four of his alleged causes of action as to the defendants Equifax Inc. and William A. Black, respondents herein (hereinafter referred to as Equifax and Black)[1] following orders sustaining the demurrers of Equifax and Black to the third, fourth, fifth and sixth causes of action of plaintiff's third amended complaint without leave to amend.

Plaintiff's suit against defendants[2] arose from a denial of plaintiff's claim under an insurance contract providing benefits in event of "Permanent Total Disability" from accidental "injury."

Generally, plaintiff alleges that defendants set up a "medical examination" of plaintiff, which was by agreement among defendants, predetermined to provide defendant American Home Assurance Company (hereinafter referred to as American Home) with a false report

---

\*Assigned by the Chairperson of the Judicial Council.

[1]American Home Assurance Company, and Dr. Jordan Packer are defendants but are not respondents herein. Equifax Inc. and William A. Black are each defendants and respondents herein.

[2]All defendants are named in the third and fourth causes of action, however; only the respondents (Equifax and Black) are named as defendants in the fifth and sixth causes of action.

thereby providing that defendant with a false but plausible sounding excuse to deny plaintiff's claim for disability benefits.

The third amended complaint designates the following causes of action and parties thereto: 1. First cause of action: "Bad Faith" (naming defendant American Home only). 2. Second cause of action: "Breach of Contract" (naming defendant American Home only). 3. Third cause of action: "Conspiracy to defraud" (naming all defendants). 4. Fourth cause of action: "Intentional Infliction of Emotional Distress" (naming all defendants). 5. Fifth cause of action: "Fraud" (naming defendants Equifax and Black only). 6. Sixth cause of action: "Constructive Fraud" (naming defendants Equifax and Black only). 7. Seventh cause of action: "Fraud" (naming defendant Packer only) 8. Eighth cause of action: "Constructive Fraud" (naming defendant Packer only). 9. Ninth cause of action: "Negligence" (naming defendant Packer only).

Plaintiff made no request below for permission to amend the third amended complaint; rather plaintiff's appeal urges that the third amended complaint, as framed, sets forth facts sufficient to state each cause of action alleged therein.

## II

### STATEMENT OF ALLEGED FACTS

So far as pertinent to this appeal the facts alleged by plaintiff in his third amended complaint are summarized as follows:

### A. THIRD CAUSE OF ACTION ("Conspiring to Defraud.")

The insurer American Home originated a scheme and plan to wrongly deny plaintiff's insurance claim. Defendants Equifax and Black conspired with American Home, and agreed to locate and persuade the defendant Dr. Jordan Packer (hereinafter referred to as Packer) to examine plaintiff and prepare a false report which provided American Home a false but plausible sounding excuse to deny plaintiff's claim for disability benefits.

Equifax and Black advised plaintiff that he was to submit to a medical examination. Plaintiff expected to receive a physical examination (but, instead) was referred to several psychological clinicians (none of whom were medical doctors) where each conducted various psychologi-

cal tests[3] upon plaintiff. In his report thereon, Packer (a licensed psychologist) omitted certain of the results of said tests.

Shortly after receipt of Packer's false report, American Home denied plaintiff's claim for disability benefits.[4]

B. FOURTH CAUSE OF ACTION ("Intentional Infliction of Emotional Distress.")

"The aforesaid outrageous conduct by defendants, and each of them, was done intentionally for the purpose of depriving plaintiff of money due him and to inflict upon him emotional distress at a time when he was incapable of earning a living with which to support himself and his family.

"As a direct and proximate result of said outrageous conduct by defendants, and each of them, plaintiff has suffered severe emotional distress, all to plaintiff's general damages...."

C. THE FIFTH CAUSE OF ACTION ("Fraud.")

"Although EQUIFAX INC., EQUIFAX SERVICES, WILLIAM BLACK...had entered into the aforesaid scheme and fraudulent agreement to deny plaintiff's claim and to have plaintiff examined for fraudulent and wrongful purposes as aforesaid, said defendants did nevertheless make certain material misrepresentations to plaintiff:

"A. Said defendants falsely represented to plaintiff that he would be examined by JORDAN PACKER a medical doctor; said representation was known to be false when it was made in that the true fact was that PACKER was a clinical psychologist.

---

[3]The contract provides that "'The Company at its own expense shall have the right and opportunity to examine the person of any individual whose injury is the basis of a claim when and as often as it may reasonably require during the pendency of a claim hereunder.' Also, the trial court took judicial notice of Appellant's verified interrogatory answer that: '...plaintiff does not contend the insurance agreement precluded the use of a *psychologist*.'" (Original italics.)

[4]Although plaintiff alleged in paragraph 19 of his first cause of action (bad faith) against American Home: "Shortly after receipt of said false report American Home denied plaintiff's claim for disability benefits...," he did not allege same in his third cause of action (conspiracy to defraud) against Equifax and Black.

"B. Said defendants falsely represented to plaintiff that said examination was being requested in order that AMERICAN HOME have sufficient medical information to objectively and fairly consider plaintiff's claim for disability benefits; said representation was known to be false when it was made in that the true fact was that said examination was, by prior agreement among all defendants herein, a sham and a ruse designed only to provide AMERICAN HOME with a false medical report that could be used to deny plaintiff's claim rather than to be used to objectively review and consider plaintiff's claim.

"C. Said defendants falsely represented to plaintiff that following said medical examination DR. PACKER would write a fair and objective report of his findings to AMERICAN HOME in order that plaintiff's claim could be honestly evaluated; said representation was known to be false when it was made in that the true fact was that said report was, by prior agreement among all defendants herein, to be written in such a manner that it would state that plaintiff was not totally and permanently disabled when in fact he was.

"The foregoing false representations were known by said defendants to be false when they were made but were made nevertheless in order to induce plaintiff to attend and submit to the aforesaid examination.

"At all times relevant plaintiff was unaware of the falsity of said representations inasmuch as plaintiff reposed trust and confidence in said defendants as they represented themselves to be agents of AMERICAN HOME.

"Said false representations were made to induce plaintiff to submit to said examination, and in reliance on said representations plaintiff was so induced and did submit to said examination.

"Because of plaintiff's fiduciary relationship with AMERICAN HOME plaintiff justifiably believed that the agents and representatives of AMERICAN HOME would likewise conduct themselves with honesty and integrity commensurate with the obligations of a fiduciary when dealing with plaintiff; and, in justifiable reliance on the truth of said representations plaintiff did submit to said examination believing he would be fairly and objectively examined by a medical doctor who would thereafter report his findings truthfully, objectively and completely.

"Had plaintiff been informed of the agreement and scheme between AMERICAN HOME, EQUIFAX, BLACK and PACKER plaintiff would not have submitted to said examination; but for the aforesaid misrepresentations plaintiff would not have attended said examination.

"As a direct and proximate result of said false representations plaintiff did submit to said examination and AMERICAN HOME thereupon received the aforesaid false report prepared by DR. PACKER and using it as its basis, AMERICAN HOME denied plaintiff's claim all to plaintiff's general damages. . . . "

D. THE SIXTH CAUSE OF ACTION ("Constructive Fraud.")

"Because plaintiff had a fiduciary relationship with AMERICAN HOME and because defendants EQUIFAX, INC., EQUIFAX SERVICES, WILLIAM BLACK . . . represented to plaintiff that they were the local representatives of AMERICAN HOME plaintiff was induced to and did repose trust and confidence in said defendants in all matters connected with his claim for disability benefits including any examination of plaintiff which said defendants were trying to arrange; as a consequence of said confidential relationship said defendants had the duty and obligation to fully and fairly disclose to plaintiff herein which would materially affect plaintiff's right to have a fair and impartial evaluation of his claim for disability benefits.

"Although EQUIFAX INC., EQUIFAX SERVICES, WILLIAM BLACK . . . had entered into the aforesaid scheme and agreement to deny plaintiff's claim and to have plaintiff examined for fraudulent and wrongful purposes, as aforesaid, said defendants did nevertheless withhold said facts and did fail to disclose said relevant matters in communicating with plaintiff for the purpose of arranging and inducing plaintiff to submit to said examination at the offices of PACKER.

"In connection with their acts in sending plaintiff to PACKER's office said defendants intentionally failed to disclose to plaintiff that:

"A. AMERICAN HOME had engaged each and all of the other defendants herein to arrange for AMERICAN HOME to receive a false report to plaintiff's condition for the purpose of denying plaintiff's claim for disability benefits;

"B. EQUIFAX INC., EQUIFAX SERVICES, WILLIAM BLACK...agreed to locate a doctor willing to write a false report, as aforesaid;

"C. EQUIFAX INC., EQUIFAX SERVICES, WILLIAM BLACK...sought out and induced DR. PACKER to agree to writing a false report, as aforesaid;

"D. The examination was to be a ruse and a sham and conducted only to give PACKER the opportunity to write said false report to be used by AMERICAN HOME to deny plaintiff's claim.

"The aforesaid omissions and failures to disclose to plaintiff were done for the purpose of inducing plaintiff to submit to an examination by a doctor who had no intention of examining or reporting honestly and objectively.

"Based upon the relationship between plaintiff and said defendants plaintiff had no reason to question and he did not question, the motives and conduct of said defendants and as a result of said confidential relationship plaintiff was so induced and did therefore submit to said examination by PACKER believing he would be fairly and objectively examined by a medical doctor who would thereafter report his findings truthfully, objectively and completely.

"Had plaintiff been informed of the agreement and scheme between AMERICAN HOME, EQUIFAX, BLACK and PACKER plaintiff would not have submitted to said examination.

"As a direct and proximate result of said fraudulent omissions, plaintiff did submit to said examination and AMERICAN HOME thereupon received the aforesaid false report prepared by PACKER and denied plaintiff's claim all to plaintiff's...damages...."

### III

### DISCUSSION

### THIRD COUNT ("Conspiracy to Defraud.")

Defendants Equifax and Black contend that plaintiff failed to state a cause of action against them for "Conspiracy to Defraud," and that an action based therein cannot be stated against them.

Basically plaintiff's third cause of action is predicated upon a "Conspiracy to Defraud" plaintiff of permanent disability benefits under a contract of insurance by setting up a "medical examination" of plaintiff in a way predetermined to produce a false report of his physical condition thereby furnishing the insurer defendant (American Home) with a false but plausible sounding excuse to deny plaintiff's claim for permanent disability benefits.

To be actionable (conspiracy) the alleged combination must result in the commission of a civil wrong, either by the perpetration of an unlawful act or some injurious act by unlawful means, resulting in damage.[5] (*Agnew* v. *Parks* (1959) 172 Cal.App.2d 756 [343 P.2d 118].) As stated in *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 64 [35 Cal.Rptr. 652], ". . . a conspiracy, in and of itself, however, atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage." The major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. (*Mox, Inc.* v. *Woods* (1927) 202 Cal. 675 [262 P. 302].)

### AGENTS AND EMPLOYEES AS CONSPIRATORS

The crucial question raised by the case before us is whether a cause of action for conspiracy will lie (assuming that all of the necessary allegations are pled) against persons *not parties to the contract* of insurance. Equifax and Black contend that an insurer's representative cannot be held liable for engaging in a "Conspiracy" with an insurer to "wrongly deny" claims.[6]

In support of their position respondents cite *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032]. As pointed out by respondents, *Gruenberg* and the case now at bench have a number of factual similarities; however, we perceive that case as distin-

---

[5]Our use, of the expression "action for conspiracy" must be understood to include the other necessary elements thereof, namely, wrongful acts done pursuant to the conspiracy and damages resulting therefrom.

[6]The defendant Dr. Jordan Packer, the psychologist alleged by plaintiff to be a co-conspirator in count three (conspiracy to defraud), did not demur thereto and remains as a defendant in said count along with American Home.

guishable. In *Gruenberg*, plaintiff, the owner of a bar and restaurant damaged by fire brought suit against three companies that insured the premises against fire loss, an adjusting firm and one of its adjusters, and a law firm and its attorney-employee. The complaint alleged in essence, that the defendants wilfully and maliciously entered into a scheme to deprive plaintiff of benefits of the fire insurance policies in that they encouraged criminal charges by falsely implying that plaintiff had a motive to commit arson, and in that, knowing plaintiff would not appear for examination on the loss as required by the policies during the pendency of criminal charges against him, they used his failure to appear as a pretense for denying disability. The trial court sustained a general demurrer to the complaint. Plaintiff declined to amend and judgment of dismissal was entered.[7]

As previously noted *Gruenberg* and the case now before us bear a number of factual similarities.[8] In *Gruenberg*, unlike the case now before us, the *sole basis* of the complaint was the defendants' alleged *breach of the duty of good faith and fair dealing* implied in every insurance contract. The *Gruenberg* court decided the issue of whether or not a noninsurer defendant, since not a party to the agreement of insurance, and therefore having no duty of good faith and fair dealing thereon, could be held liable on the theory of conspiracy to breach *that duty.* In so doing the court did not as respondent erroneously concludes, enunciate a rule exempting agents and employees from liability for *all* civil conspiracies. In this regard the court stated as to the *noninsurer defendants*: "Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to

---

[7]The Supreme Court (in *Gruenberg*) reversed the judgment of the trial court as to the defendant insurance companies and remanded the cause with directions to overrule the demurrer as to them. The court held that "...while the complaint is far from a model pleading, it does allege in substance a breach on the part of defendant insurance companies of their *duty of good faith and fair dealing....*" (italics added), which is implied in every *insurance contract.* (P. 575.)

[8]Both the case at bench and *Gruenberg* allege a similar motive for the alleged conspiracy, i.e., to create a false but plausible sounding excuse to deny valid insurance claims; in the case before us, plaintiff alleges that the conspirators include among others, the insurer defendant (American Home), defendant Equifax, handling claims and claims investigations and defendant Black, its employee handling claims investigations; similarly in *Gruenberg* the alleged conspirators were the various insurer defendants, a claims adjusting and investigating company, an employee of the latter, an outside law firm and one of its attorney-employee; and in both cases the plaintiffs claim that pursuant to the conspiracy their insurance claims were denied thereby depriving them of benefits/or monies provided for by their insurance; which is a part of the alleged damage.

an implied duty of good faith and fair dealing." It was in this regard that the court went on to say: "Moreover, as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy." The court explained that this rule is derived from the principle that "...ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged." (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 576.)

The court clearly indicated that it was dealing solely with the tort of breach of duty of good faith and fair dealing and not other torts. In this regard the court said: "[P]laintiff alleges that...the insurance adjusting firm and its employee...were the agents and employees of defendant insurers and each other and were acting within the scope of that agency and employment when they committed the acts attributed to them. However, plaintiff contends that these noninsurer defendants breached only the duty of good faith and fair dealing; *therefore, we need not consider the possibility that they may have committed another tort in their respective capacities as total strangers to the contracts of insurance.*" (Italics added; p. 576.) The *Gruenberg* court, as did the court in *Wise* v. *Southern Pacific Co., supra,* 223 Cal.App.2d 50, cited by respondent, insofar as they insulated corporate agents and employees from liability for civil conspiracy, limit such immunity to civil conspiricies that are based on the *duty of good faith and fair dealing implied in certain contracts* for inducing the breach of the principles' contract. As the court aptly stated in *Cancino* v. *Farmers Ins. Group* (1978) 80 Cal.App.3d 335, 340-341 [145 Cal.Rptr. 503], in commenting on *Gruenberg* it "...held that certain defendants (agents and employees of the insurers) had no 'duty of good faith and fair dealing'...to the insured. The court said in this respect...'Obviously, the non-insurer defendants were not parties to the agreements for the insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing.' The quoted statement is no more than a shorthand statement of the proposition that because these defendants were not parties to the insurance contract, they were not insurers and were not subject to an implied duty to deal fairly with the insured."

Contrary to this situation described in *Gruenberg* in the case now before us, plaintiff in his third cause of action does *not* base his claim on any duty of good faith and fair dealing. As previously discussed, if he had done so, the defendants Equifax and Black would have been insu-

lated against such an alleged conspiracy inasmuch as they were not parties to the agreement of insurance. Rather, plaintiff's claim here is that all defendants conspired to commit certain wrongful acts against him and that such acts were fraudulent and unprivileged.[9] It is not material to the issue here raised that plaintiff may not be able to prove his allegations at the time of trial.

■ The law imposes the obligation that every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights. This duty is *independent* of the contract and attaches over and above the terms of the contract.[10] The fact that there existed a contract between the plaintiff and the defendant would not immune the latter from penalty that is ordinarily visited upon tortfeasors. (*Jones* v. *Kelly* (1929) 208 Cal. 251 [280 P. 942].)

■ A cause of action for conspiracy will lie against agents and employees of insurers even though the former are not parties to the agreement of insurance when they join the insurer in a conspiracy to defraud the insured. As such, they are jointly liable with those with whom they conspire to commit the tort. The *Gruenberg* decision is fully consistent with our holding.

We now proceed to examine the complaint for its legal sufficiency.

As previously noted, to state a cause of action for conspiracy, the complaint among other things must allege a wrongful act or acts done pursuant to the conspiracy (see fn. 9, *ante*). Although the conspiracy (agreement) is ordinarily not actionable by itself, the cause of action arises out of some wrongful act committed by one or more of the conspirators, and if such a wrongful act is set forth the conspiracy averment is unnecessary to the statement of a cause of action. The plaintiff may therefore state a cause of action against several persons by simply alleging that the named defendants committed the acts. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 773, p. 2389.)

---

[9]To state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. (*Mox, Inc.* v. *Woods, supra*, 202 Cal. 675; *Orloff* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 484 [110 P.2d 396]; *California Auto Court Assn.* v. *Cohn* (1950) 98 Cal.App.2d 145 [219 P.2d 511]; *Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278 [295 P.2d 113].)

[10]In the case at bench the tortious conduct alleged to have been done pursuant to the conspiracy was *not* based on a claim of bad faith, nor was it dependent on the noninsurer defendants being parties to the agreement of insurance.

■ The essential allegations for the tort action of damages for deceit are:

(1) Representation, (2) falsity; (3) knowledge of falsity; (4) intent to deceive; (5) reliance and resulting damage (causation).

MISREPRESENTATION

Defendants contended that plaintiff failed to state sufficient facts to plead a "misrepresentation." Defendants urge that the misrepresentation alleged by plaintiff is that defendants Equifax and Black "advised plaintiff that he was to submit to a medical examination at the office of Dr. Jordan Packer," (who is a clinical psychologist and not a medical doctor) and that this was not misrepresentation because a psychological examination is a medical examination; they also urge that such an examination is authorized by the insurance agreement.[11]

Plaintiff's third cause of action incorporates by reference most of the allegations of the first cause of action. In substance he alleged that the defendant American Home hired and employed defendant Equifax to select and induce a local doctor to examine plaintiff and to thereafter prepare a medical report which would falsely state plaintiff's condition; he alleged that American Home retained defendant Equifax periodically and knew that said defendant worked with a number of doctors who would participate in schemes of the nature above referred to; he alleged that each of said defendants and the defendant Black entered into an agreement with the defendant Dr. Jordan Packer, a clinical psychologist, that the latter would write a false report which would justify a denial of plaintiff's claim, and that said defendants thereafter sent plaintiff to Dr. Packer telling plaintiff he was to submit to a medical examination at the latter's office.

■ Although mere nondisclosure is not ordinarily actionable unless the defendant is a fiduciary with a duty to disclose, active concealment or suppression of facts by a nonfiduciary is the equivalent of a false representation, i.e., *actual fraud*. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 582, p. 2220.) ■ In the case now before us, the pleadings set forth facts showing that the defendants orchestrated a scheme

---

[11]Based on the totality of the facts alleged by plaintiff, we do not find it necessary to this case to determine whether a psychological examination is a medical examination; we do not consider this material to the issues presented.

to deprive him of his insurance benefits, and that part of this scheme was to lead him to believe that he was going to receive a physical examination while concealing from him a material fact, i.e., that by prearrangement between defendants the examination was to be dishonest and produce a false report of plaintiff's condition. Defendants' active concealment from plaintiff of this material fact constituted a false representation.

CAUSATION

Defendants next contend that insufficient facts were alleged to establish proximate cause. ■ The causation aspect of actions for damage for fraud and deceit involves three distinct elements: (1) actual reliance, (2) damage resulting from such reliance, and (3) right to rely or justifiable reliance. In substance plaintiff alleged as part of the facts of the conspiracy that defendants agreed with the defendant Dr. Packer that he (Packer) would conduct a sham examination of plaintiff to be used as a basis for a false report of plaintiff's condition; that defendant Dr. Packer misrepresented to plaintiff that he was a medical doctor who would conduct a medical examination of plaintiff for his insurance carrier in connection with plaintiff's claim; that said examination was being requested in order to give defendant American Home sufficient medical information to objectively and fairly consider plaintiff's claim; that in reliance on those representations plaintiff did submit to such examination; and that a false report based on such alleged examination was performed.

The plaintiff must plead that he believed the representations to be true (or that he was ignorant of their falsity which amounts to the same thing), and that in reliance thereon (or induced thereby) he entered into the transaction. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleadings, § 590, pp. 2228-2229.) In the instant case, when defendants represented to plaintiff that he was to be examined[12] by the defendant Dr. Packer (reputedly a medical doctor), said representation carried with it an *implied* representation that the examination would be fairly conducted and that an honest report was to be prepared therefrom, not that it would be a bogus examination to be used as a basis for a false report to defeat plaintiff's claim. ■ Notwithstanding that there is no *direct* averment in the complaint that the fraudulent representation induced

---

[12]As pointed out by defendants pursuant to the terms of the insurance contract, plaintiff was required to attend the examination.

plaintiff to submit to the examination it appears from the complaint by a fair inference that plaintiff intended to allege, and did allege though defectively, that he relied upon the misrepresentation made by the defendants as aforestated, and that they were the inducements for him to submit to the bogus examination. In the case of *Pembrook v. Houston* (1919) 41 Cal.App. 54 [181 P. 828], it was contended that the complaint did not state facts sufficient to constitute actionable fraud. In discussing this point the court said: "However, the only question of the sufficiency of this complaint was raised by general demurrer, and, as it is obvious that there has been an attempt to plead the facts relied on as establishing fraud, and that the weakness of the complaint is in the insufficiency of their statement...we are disinclined to hold the complaint insufficient, in the absence of special demurrer." (P. 58.)

Defendants' argument that no sufficient facts were alleged to show that either the examination report, or defendants' conduct, was a proximate cause of the denial of plaintiff's claim is without merit.[13]

■ A demurrer admits all material and issuable facts properly pleaded. However, it does not admit contentions, deductions or conclusions of, fact or law alleged therein. (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732].) ■ "In determining whether or not the complaint is sufficient as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to *any relief* at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged." (*Matteson v. Wagoner* (1905) 147 Cal. 739, at p. 742 [82 P. 436].) (Italics added.) To put it another way, plaintiff need only plead facts showing that he may be entitled to some relief. For the purpose of ruling on the sufficiency of the pleadings we need not be concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint.

---

[13]The demurrer of defendant Dr. Packer as to this third cause of action was overruled by the court.

IV

Fourth Count ("Intentional Infliction of
Emotional Distress.")

■ The elements of the prima facie case of tort for emotional distress are: (1) Outrageous conduct by the defendant; (2) the defendants' intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendants' outrageous conduct. (*Little* v. *Stuyvesant Life Co.* (1977) 67 Cal.App.3d 451 [136 Cal.Rptr. 653].)

■ Defendants contend that no cause of action for intentional infliction of emotional distress has been stated. In this regard defendants contend that no causal connection is shown; that defendants' conduct was not outrageous and that it was privileged.

In *Little, supra*, the plaintiff brought action against a group disability insurer for compensatory and punitive damages for intentional infliction of emotional distress, arising out of the insurer's termination of plaintiff's total disability payments. The termination was based on examinations by physicians selected by the defendant who concluded defendant was not totally disabled, but the physicians had not been supplied with all of plaintiff's medical records or reports from his treating physicians. Plaintiff testified to the emotional distress, including anger and depression caused by the termination of payments. The court at page 462 in discussing what constituted "Outrageous Conduct," stated among other things: ". . . reasonable inferences may be drawn that defendant purposely ignored the great bulk of the medical information it had and withheld that information from the physicians it selected to examine plaintiff and that it sought only to justify its predetermined course of discontinuing disability benefit payments justly due plaintiff under the policy. While this conduct is less egregious than that of the defendant in *Fletcher* (10 Cal.App.3d at p. 392), the jury was fully justified in impliedly finding defendant's conduct *outrageous.*" (Italics added.)

In the case at bench plaintiff, to state a cause of action, incorporates by reference allegations from the first count, which avers among other things, that material findings about plaintiff made by Roche Psychiatric Institute which had given plaintiff the Minnesota Multiphasic personality, were intentionally omitted by the defendant Dr. Packer pursuant to

his agreement with the other defendants to write a false report to be used in justifying a denial of plaintiff's claim for disability benefits. It cannot be said that where the complaint alleges facts which show that noninsurer defendants worked with an insurer defendant to deliberately falsify medical records so as to provide a basis upon which to deny an insured's claim, such conduct does not amount to outrageous conduct; nor can it be claimed that such conduct is privileged.

In *Bowden* v. *Spiegel, Inc.* (1950) 96 Cal.App.2d 793 [216 P.2d 571], a complaint was held to state a cause of action for intentional infliction of emotional distress which alleged that defendant's agent telephoned plaintiff's neighbor at 11 p.m. asking that plaintiff be found to answer "an emergency call"; that when plaintiff answered, the caller demanded payment of a bill and threatened court action, in the hearing of members of the neighbor's family; that plaintiff owed no such bill and that the cause was made maliciously, to annoy plaintiff who became ill.

Defendants' contentions relative to causation appear to address the question of proof, rather than the sufficiency of the pleadings. We have carefully reviewed count four, including the portions thereof incorporated from count one by reference and conclude that plaintiff has alleged sufficient facts to show that defendants' conduct proximately caused his emotional distress. Plaintiff's use of the word "outrageous" in describing defendants' alleged conduct neither adds nor detracts anything from the sufficiency of the pleadings. As we previously stated, for the purpose of ruling on the sufficiency of the pleadings we need not be concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint.

### FIFTH AND SIXTH COUNTS ("Actual and Constructive Fraud.")

We have heretofore discussed *fraud* in connection with count three. For the reasons stated therein we hold that defendants contention that plaintiff's complaint fails to state a cause of action for actual fraud is incorrect.

### CONSTRUCTIVE FRAUD

Unlike *actual fraud*, constructive fraud depends on the existence of a fiduciary relationship of some kind,[14] and this must be

---

[14]The elements of the cause of action for constructive fraud are: (1) fiduciary relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting injury (causation).

alleged. (*Feeny* v. *Howard* (1889) 79 Cal. 525 [21 P. 984].) Although plaintiff does not contend that a fiduciary relationship existed between him and the defendants Black and Equifax, he does contend that such confidential relationships which existed between said defendants and the defendant American Home (which does have a confidential relationship with him as his insurer), imposes on the former a duty to refrain from assisting in the implementation of the scheme to deny him his disability benefits as well as the duty to disclose the scheme to him.

As previously stated in our discussion of *conspiracy to commit fraud*, active concealment or suppression of facts by a nonfiduciary is the equivalent of a false representation, i.e., *actual fraud*; however, the elements of a representation and falsity, are absent from *constructive fraud*. The fraud consists of the breach of the *fiduciary duty* of disclosure of relevant matters arising from the relationship. ██ ██ There being no fiduciary relationship alleged between plaintiff and anyone other than defendant Home Assurance and there being no facts alleged sufficient to show that a confidential relationship [15] existed between plaintiff and the defendants Equifax and Black, the demurrer to the cause of action for constructive fraud was properly sustained by the court. Plaintiff's allegation that a "confidential relationship" existed, is nothing more than a conclusion of law and was properly disregarded by the court.

The order is reversed as to all counts except count six—constructive fraud. Each party is to bear his own costs on appeal.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied November 28, 1980, and respondents' petition for a hearing by the Supreme Court was denied December 24, 1980.

---

[15] A confidential relationship exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. (*Kudokas* v. *Balkus* (1972) 26 Cal.App.3d 744 [103 Cal.Rptr. 318].)