Filed 8/31/15  Parkinson v. Meadows CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GABRIELLE PARKINSON et al.,<br><br>      Cross-complaints and Respondents,<br><br>v.<br><br>MICHAEL MEADOWS et al.,<br><br>      Cross-defendants and Appellants. | A140409<br><br>(Humboldt County<br>  Super. Ct. No. DR110237) |

Michael Meadows, as a beneficiary of the Joyce Batchelor Trust, filed an action against Gabrielle and Douglas Parkinson seeking judicial supervision of the dissolution of a partnership between Joyce Batchelor and Gabrielle and Douglas Parkinson (Batchelor/Parkinson partnership) and for an accounting relative to the partnership's assets, in particular, a rental property located in Eureka.  Respondents Gabrielle Parkinson, Douglas Parkinson, and the Batchelor/Parkinson Partnership (hereafter collectively referred to as respondents) filed a cross-complaint against appellant Michael Meadows and his attorney appellant Carrie Gustafson.  In their cross-complaint, respondents allege, in pertinent part, that appellants have wrongfully interfered with respondents' ownership and management rights in the Eureka rental property.  Respondents seek a declaration as to the ownership of the Eureka rental property and, like Meadows, an accounting of the assets of the Batchelor/Parkinson partnership, including the Eureka rental property.  Appellants, in turn, filed separate motions to strike the cross-complaint as a "strategic lawsuit against public participation" pursuant to Code

1

of Civil Procedure[1] section 425.16 (also hereafter referred to as the SLAPP or anti-SLAPP statute).  In separate orders, the trial court denied the motions without prejudice.

On this appeal, appellants contend the trial court erred when it denied their motions.  Having reviewed the record and the briefs submitted by the parties, and for the reasons more fully explained below, we conclude the cross-complaint here is not a SLAPP suit.  Accordingly, we shall remand the matter to the trial court with directions to amend its orders to reflect that appellants' special motions to strike pursuant to section 425.16 are denied with prejudice.

## FACTS[2]

### A.    Meadows' Complaint

Michael Meadows, represented by Carrie Gustafson, initiated litigation against named defendants respondents Gabrielle Parkinson and Douglas Parkinson, seeking judicial supervision of the dissolution of a partnership between Joyce Batchelor (Meadows' now deceased mother) and respondents Parkinsons (Batchelor/Parkinson partnership), and an accounting of partnership assets, in particular, a rental property in Eureka.

In his second amended complaint (SAC), the operative pleading, Meadows alleged that in 1977, Batchelor and the Parkinsons purchased the Eureka rental property, pursuant to an oral partnership agreement.  From 1977 until January 2009, when Batchelor died, Batchelor and the Parkinsons allegedly "conducted themselves as partners with respect to" the Eureka rental property.  "Among other things, the parties reported one-half of the business income, expenses and depreciation on their respective federal income tax returns each and every year."

---

[1]    All further unspecified statutory references are to the Code of Civil Procedure.

[2]    The opinion's factual portion is taken from the parties' pleadings and exhibits submitted in connection with appellants' anti-SLAPP motions.  However, our decision should not be read and we express no opinion on the accuracy of the "facts" as alleged in the parties' pleadings.

Meadows further alleged that in 1977 Batchelor and the Parkinsons initially took title to the Eureka rental property as joint tenants with an undivided one-half interest, and in 1985 title was changed to tenants in common with an undivided one-half interest. Ten years later, Batchelor executed a trust and a "pour-over will," giving her entire estate, including her undivided one-half interest in the Eureka rental property (as the "separate property of the settlor"), to the Joyce M. Batchelor 1995 Trust (hereafter the Batchelor Trust). Batchelor named herself as trustee, and named Kimberly Kollmeyer (Batchelor's daughter and Meadows' sister) and respondent Gabrielle Parkinson, as first and second successor trustees, respectively. The Batchelor Trust provided that on Batchelor's death, one-half of the trust estate was to be distributed to Kollmeyer, and one-half of the trust estate was to be held by Kollmeyer (or a successor trustee) for the benefit of Meadows in a child's trust. Meadows did not receive an interest in any specific trust asset.[3] Similarly, in 2002, the Parkinsons transferred their undivided one-half interest in the Eureka rental property to the Douglas B. Parkinson & Gabrielle G. Parkinson Revocable Living Trust, in which the Parkinsons named themselves as trustees.

Meadows further alleged that the Batchelor/Parkinson partnership dissolved, as a matter of law, 90 days after Batchelor's death, but the Parkinsons had taken no apparent steps to wind up the partnership's business. As a consequence, the Eureka rental property had allegedly significantly deteriorated, secured debt had increased, and there had been no accounting to anyone regarding an estimated monthly rent of $2,800 for the property's four units.

Meadows also claimed standing to pursue the litigation based on the following facts. Specifically, he alleged that on January 21, 2011, all three named beneficiaries (Meadows, Kollmeyer, and Bramlett) of the Batchelor Trust entered into a "settlement agreement," (hereafter Batchelor Trust beneficiaries' settlement agreement), whereby Meadows purported to obtain all right, title, and one-half ownership interest in the Eureka

---

[3]    Kollmeyer's son, Aaron J. Bramlett, was named a contingent beneficiary under a grandchild's trust in the event either or both Kollmeyer and Meadows failed to survive Batchelor.

rental property, and he became successor in interest to all claims and causes of actions related to that rental property. A quit claim deed was recorded by which Kollmeyer, individually, and as trustee of the Batchelor Trust, transferred the entire one-half ownership interest in the Eureka rental property to Meadows.

The Parkinsons filed a demurrer to the SAC. In its ruling, the trial court concluded, in pertinent part, that Meadows had no right to sue "as a transferee" of the entire Batchelor Trust estate "via" the Batchelor Trust beneficiaries' settlement agreement, because that agreement appeared to violate certain sections of the Probate Code. Because Meadows might have standing to sue as a Batchelor Trust beneficiary, however, the court refused to dismiss the SAC for lack of standing. As to the Parkinsons' challenges to the substantive causes of action, the court dismissed without leave to amend the causes of action for breach of fiduciary duties, conversion of partnership funds, and financial elder abuse, on the ground that those claims were time-barred. Based on Meadows' allegation that the Eureka rental property belonged to the Batchelor/Parkinson partnership, the court overruled the demurrer as to causes of action for judicial supervision of dissolution of the partnership, an accounting of the partnership funds, and imposition of a constructive trust for partnership assets.

## B. Respondents' Cross-Complaint

Thereafter, in May 2013, respondents Parkinsons and the Batchelor/Parkinson Partnership filed a cross-complaint against appellant Meadows and appellant Carrie Gustafson, Meadows' counsel.[4] The cross-complaint set forth 15 causes of action. Pertinent to our discussion are the following causes of action: inducing breach of and conspiracy to breach fiduciary duties (2d and 3d causes of action); conversion and conspiracy to commit conversion (4th and 5th causes of action), interference with contractual relationship (6th and 7th causes of action), negligent infliction of emotional distress (9th cause of action), financial and emotional elder abuse (10th cause of action),

---

[4]    The cross-complaint also named as cross-defendants Meadows' sister Kimberley Kollmeyer and Meadows' nephew Aaron Bramlett. Kollmeyer and Bramlett are not parties to these appeals.

4

accounting (11th cause of action), constructive trust (13th cause of action), constructive trust (14th cause of action), and accounting (15th cause of action).  Respondents sought both compensatory and punitive damages, as well as pertinent equitable relief: (a) an order directing cross-defendants to transfer any and all partnership assets to the Batchelor/Parkinson partnership or the Parkinsons, (b) a declaration that cross-defendants hold any Batchelor/Parkinson partnership assets as trustees of a resulting or constructive trust for the partnership or the Parkinsons; and (c) a declaration that Meadows is not an owner of the Eureka rental property, which is owned either by the Batchelor/Parkinson partnership, or owned in equal parts by the Batchelor Trust and the Parkinsons.

Respondents' cross-complaint, in pertinent part, alleged that the Eureka rental property was an asset of the Batchelor/Parkinson partnership, and appellants had wrongfully interfered with respondents' ownership interests and management rights in the Eureka rental property.  The complaint describes several examples of appellants' purported affirmative acts of misconduct:  (1) without the consent of the Parkinsons, appellants attempted to make "illegal" transfers regarding the ownership of the Eureka rental property (by the execution of the Batchelor Trust beneficiaries' settlement agreement and recording of a quitclaim deed in favor of Meadows in violation of partnership law and probate law), (2) without the consent of the Parkinsons, appellants made statements to the Eureka rental property manager, threatening to take possession of the rental property without legal process, and (3) without the consent of the Parkinsons, appellants made statements to Eureka rental property unit tenants, demanding that they begin withholding their rental payments rather than paying respondents.  As a consequence, respondents alleged that the good will of the partnership had been damaged, rental income had been lost, the Parkinsons had been compelled to incur expenses and attorney fees in defending against Meadows' lawsuits regarding the ownership of the Eureka rental property, and the Parkinsons had been prevented from performing their obligations under the Batchelor/Parkinson partnership agreement and rental agreements, or their performance had been made more expensive and burdensome.

**C.** **Appellants' Section 425.16 Motions To Strike the Cross-Complaint**

Appellants, in response to the cross-complaint, filed separate section 425.16 motions to strike all of the causes of action alleged against them. Respondents filed a timely opposition. After a hearing, the trial court issued two orders resolving the motions. The trial court denied Meadows' motion to strike the accounting and constructive trust causes of action on the ground that Meadows had failed to show that those claims arose from protected activity covered by section 425.16. The court also denied, without prejudice, both Meadows' motion to strike and Gustafson's motion to strike the causes of action as alleged against them for inducing breach of and conspiracy to breach fiduciary duties, conversion and conspiracy to commit conversion, interference with contractual relationship, negligent infliction of emotional distress, and elder abuse. As to those substantive causes of action, the court ruled that while appellants had established the claims arose from litigation activities that came within the purview of section 425.16, respondents "have made a prima facie show of facts necessary to establish a probability of prevailing on the merits of the claims based on the contention that the acts and communications complained of were made pursuant to an illegal contract."

Appellants' timely appeals from the November 7, 2013, orders denying their section 425.16 motions to strike ensued.

## DISCUSSION

Section 425.16 provides, in pertinent part, that, "A cause of action against a person arising from any act of that person in furtherance of the person's right to petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Id*., subd. (b)(1).)

"Consideration of a section 425.16 motion to strike involves a two-step process. 'First, the court decides whether the defendant [or cross-defendant] has made a threshold showing that the challenged cause of action is one arising from protected activity. The

6

moving defendant's [or cross-defendant's] burden is to demonstrate that the act or acts of which the plaintiff [or cross-complainant] complains were taken "in furtherance of the [defendant]'s [or cross-defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute.  (§ 425.16, subd. (b)(1).)  If the court finds such a showing has been made, it then determines whether the plaintiff [or cross-complainant] has demonstrated a probability of prevailing on the claim.'  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)"  (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669 (*Peregrine Funding*).)  "Our review is de novo on both prongs of the anti-SLAPP statute."  (*Lee v. Fick* (2005) 135 Cal.App.4th 89, 95-96.)

Appellants bear "the initial burden" of demonstrating that the challenged causes of action arose from their protected activity.  (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 66.)  "However, as our Supreme Court has observed, 'the "arising from" requirement is not always easily met.  [Citations.]'  ([*Ibid.*])  A cause of action does not 'arise from' protected activity simply because it is filed after protected activity took place.  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77 [124 Cal.Rptr.2d 519, 52 P.3d 695].)  Nor does the fact '[t]hat a cause of action arguably may have been triggered by protected activity' necessarily entail that it arises from such activity.  (*Id.* at p. 78.)  The [courts] must instead focus on the substance of [respondents'] lawsuit in analyzing the first prong of a special motion to strike.  (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 413-414 [9 Cal.Rptr.3d 242]; see *City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78.)  In performing this analysis, the Supreme Court has stressed, 'the critical point is whether the . . . cause of action itself was *based on* an act in furtherance of [appellants'] right of petition or free speech.  [Citations.]'  (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78.)"  (*Peregrine Funding, supra*, 133 Cal.App.4th at pp. 669-670.)  Thus, we look to the nature of the dispute to be resolved by respondents' cross-complaint, and analyze whether that "dispute, and not any protected activity, is 'the gravamen or principal thrust' of the action."  (*Episcopal Church Cases* (2009) 45 Cal.4th

7

467, 477-478.) "If liability is not based on protected activity, the cause of action does not target the protected activity and is therefore not subject to the SLAPP statute." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550.) Against this legal back drop we now analyze appellants' claims.

Meadows argues he met his burden under the first prong of the section 425.16 analysis because all causes of action against him are based on either the Batchelor Trust beneficiaries' settlement agreement or Gustafson's communications with the Eureka rental property manager and tenants after Meadows filed his lawsuit against the Parkinsons. Gustafson similarly argues she met her burden under the first prong of the section 425.16 analysis because "[n]egotiating the settlement, filing the lawsuits based on the Settlement Agreement, and protecting Meadows' ownership rights in the ongoing litigation by contacting opposing counsel, the property manager and tenants are not 'incidental' to any alleged unprotected conduct, but the core target of [r]respondents' causes of action" against her.

Appellants' arguments are unavailing as they have misconstrued the " 'overall thrust' " of respondents' cross-complaint. (*Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 273.) By their cross-complaint, respondents seek relief based on an overarching claim that appellants have wrongfully interfered with respondents' ownership interests and management rights in the Batchelor/Parkinson partnership assets, and in particular, the Eureka rental property. "This dispute, and not any protected activity, is 'the gravamen or principal thrust' of the [cross-complaint]. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 193 [6 Cal. Rptr.3d 494].)" (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 477.) The importance of the factual allegations ─ an illegal transfer of partnership assets via the Batchelor Trust beneficiaries' settlement agreement and recording of quitclaim deed, and the statements made to the Eureka rental property manager and tenants ─ is to demonstrate that appellants breached their separate independent legal duties to respondents not to interfere with respondents' ownership interests and management rights in the Batchelor/Parkinson partnership assets, and in particular, the Eureka rental property. It is well settled that,

8

" ' "[t]he law imposes the obligation that '*every person* is bound . . . *to abstain from injuring the* person or *property of another*, or infringing upon *any of his rights*.' " ' (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515 [28 Cal.Rptr.2d 475, 869 P.2d 454], italics added . . .; accord, *Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 511 [169 Cal.Rptr. 478]; see [Civ. Code,] §§ 1708 ['Every person is bound, without contract, to abstain from injuring the . . . property of another . . . .'], 3520 ["No one should suffer by the act of another'].)  [And,] '[a]ttorneys may be liable for participation in tortious acts with their clients . . . .' (*Doctors' Co. v. Superior Court* [(1989)] 49 Cal.3d [39,] 46; see *id*. at p. 47.)" (*Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1154-1155 (*Rickley*).)  "When an attorney 'actively' participate[s] in conduct that [goes] way beyond the role of legal representative' (*Burtscher* [*v. Burtscher* (1994)] 26 Cal.App.4th [720,] 727), he or she may be liable for wrongdoing to the same extent as a nonattorney.  A license to practice law does not shield an attorney from liability when he or she engages in conduct that would be actionable if committed by a layperson.  An attorney who commits such conduct may be liable under a conspiracy theory when the attorney agrees with his or her client to commit wrongful acts." (*Rickley, supra*, at p. 1153; *id*. at p.1163 [court held litigation "privilege does not bar a civil conspiracy claim against a defendant and his or her attorney when they jointly act to interfere with efforts to remove contaminated debris from [plaintiff's] property, resulting in a continuing nuisance"]; see also *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1141 ["[s]tatements to nonparticipants in the action" are generally not covered by the litigation privilege (Civ. Code, § 47, subd. (b)), "and are thus actionable unless privileged on some other basis"].)  Consequently, we conclude the cross-complaint's causes of action as alleged against appellants are not subject to section 425.16's special motion to strike.  (See *Episcopal Church Cases, supra,* 45 Cal.4th at p. 478 ["[t]he . . . fact that protected activity may lurk in the background – and may explain why the rift between the parties arose in the first place – does not transform a property dispute into a SLAPP suit"]; *City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78 ["responsive but independent lawsuit [may] arise from the same transaction or occurrence alleged in a preceding

9

lawsuit, without necessarily arising from the earlier lawsuit itself"]; *Baharian-Mehr v. Smith, supra,* 189 Cal.App.4th at p. 273 [plaintiff's breach of fiduciary duty and related business tort claims were based on business partners' alleged mismanagement and misspending of corporate funds; partners' acts of hiring attorneys and investigators were incidental to those claims]; cf. *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures, supra*, 184 Cal.App.4th at p. 1550 [complaint was found to be subject to anti-SLAPP motion because allegations of protected activities, standing alone, provided an independent basis for liability for which plaintiff sought damages].)[5]

Also, we see no merit to appellants' arguments that their section 425.16 motions to strike should be granted because respondents' cross-complaint "is a classic meritless attempt to harass and intimidate" Meadows for filing the underlying action. "[A] claim filed in response to, or in retaliation for . . . actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic. [Citation.] That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such. To focus on [respondents'] litigation tactics, rather than on the substance of [their] lawsuit, risks allowing [appellants] to

---

[5] We find misplaced Gustafson's reliance on *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200 (*Finton Construction*) and *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793 (*Bergstein*). In *Finton Construction*, the plaintiff's lawsuit against defendant attorneys was based solely on counsel's receipt of an allegedly stolen hard drive containing data pertinent to pending litigation between plaintiff and defendant attorneys' client. (238 Cal.App.4th at pp. 204, 207.) Similarly, *in Bergstein*, the plaintiff's lawsuit against defendant attorneys was based solely on allegations that counsel "engaged in illegal conduct when they 'solicited and received . . . confidential, privileged, and/or propriety information' from plaintiffs' former attorney, and used that information 'in devising the legal strategy to be employed' in the litigation against plaintiffs." (236 Cal.App.4th at p. 797.) Unlike *Finton Construction* and *Bergstein*, which should be limited to their facts, respondents here seek to hold appellant Gustafson liable for a violation of an independent legal duty owed to respondents beyond the duties embodied in her legal services to Meadows. Whether respondents will be able to demonstrate that Gustafson engaged in conduct beyond the duties embodied in her legal services to Meadows, and which violated an independent legal duty owed to respondents, is not before us and will be resolved in further proceedings.

circumvent the showing expressly required by section 425.16, subdivision (b)(1) that an alleged SLAPP arise from protected speech or petitioning. [Citation.]" (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78 & fn. 4.) In footnote four of the *City of Cotati v. Cashman* decision, our Supreme Court observed, "to emphasize the anti-SLAPP statute's express requirements does not leave litigants confronting, meritless, retaliatory countersuits without a remedy." (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78, fn. 4.) "If a cross-defendant believes that a cross-complaint has been filed 'for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,' or that the claims against it are frivolous or lacking in evidentiary support, then it may move for sanctions, including attorney fees and other expenses, to be awarded in the trial court's discretion. (See § 128.7, subds. (b)-(d).) The anti-SLAPP statute, however, is not the appropriate remedy." (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 934, quoted in *City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78, fn. 4.)

Because appellants have not met their burden under the first prong of section 425.16 analysis, we do not need to address whether respondents demonstrated they are likely to prevail on their cross-complaint. Accordingly, our decision should not be read and we express no opinion on the merits of the cross-complaint. Appellants are free to challenge the causes of action alleged against them on other grounds and through other procedural means. (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1288, fn. omitted.)

## DISPOSITION

The matter is remanded to the trial court to amend its orders to reflect that appellants' special motions to strike pursuant to section 425.16 are denied with prejudice, and for further proceedings consistent with this opinion. Respondents are awarded their costs on appeal.

11

                                    _____

                                    Jenkins, J.

We concur:

_____

Pollak, Acting P. J.

_____

Siggins, J.