**ALGERNON BLAIR, INC., a corporation; and Castle Construction Company, Inc., a corporation, Plaintiffs,**

v.

**COMBS–GATES INDIANAPOLIS, INC., a corporation, Defendant.**

Civ. A. No. 80–326–N.

United States District Court, M. D. Alabama, N. D.

Nov. 4, 1980.

Robison & Belser, Richard C. Belser and John M. Bolton, III, Montgomery, Ala., for plaintiffs.

Steiner, Crum & Baker, M. R. Nachman, Jr. and Wanda D. Devereaux, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

HOBBS, District Judge.

The above styled cause is now before the Court on defendant's motion to dismiss plaintiffs' cause of action for improper venue, lack of venue over the defendant, lack of personal jurisdiction over the defendant, failure to state a claim on which relief can be granted, and failure to name defendant correctly. Upon a review of the pleadings and for the reasons set out below, this Court is of the opinion that defendant's motion to dismiss should be denied.

The primary point of contention raised by this motion to dismiss has been this Court's power to exercise personal jurisdiction over the defendant. The Court is of the opinion

that this jurisdictional issue is the sole question meriting any discussion.

## FACTS

For at least three years prior to June 1980, plaintiffs received direct mail solicitation from defendant Combs–Gates Indianapolis, Inc. (hereinafter referred to as "Combs–Gates"). This regular solicitation arrived approximately once every month in the form of brochures advertising various aircraft handled by Combs–Gates for sale or lease to parties such as plaintiffs. These monthly brochures were apparently not part of an indiscriminate mailing program. On the contrary, they were addressed in a precise, personalized manner to such individuals as "Mr. Frank R. Lawson" (an official at Algernon Blair, Inc.) or to "Director of Flight Operations, Algernon Blair, Inc."

In addition to mailings targeted directly to plaintiffs, Combs–Gates ran advertisements in such nationwide publications as "Business and Commercial Aviation" and "The A/C Flyer." These ads solicited the business of those desiring either to buy, sell, or lease aircraft. Several of the magazines carrying such ads were distributed in Alabama.

Finally, Combs–Gates operates an aircraft parts sales division which does business in Alabama. In fact, Combs–Gates employs a sales representative in the southeastern United States whose sales territory includes the state of Alabama. The defendant stresses the limited nature of this sales representative's activity as it relates to Combs–Gates' overall sales. The fact nevertheless remains that some parts sales to Alabama result from regular, *personal* calls made on customers in Alabama by this sales representative.

In June 1980, plaintiffs became interested in trading a 681–B Turbo Commander airplane for a newer version of that same model. Plaintiffs contacted the defendant's Colorado office regarding a possible trade of aircraft. Defendant's Colorado office informed plaintiff that all aircraft of the type sought by plaintiffs were handled by defendant's Indiana office. Defendant's Indiana office promptly followed up on plaintiffs' inquiry. At this point, there began a negotiation process between plaintiffs and Combs–Gates which stretched over the next month. Affidavits of several employees of Algernon Blair, Inc. show that approximately thirty–five phone calls were placed between the parties during this process of negotiating a trade. About two–thirds of this number were initiated by plaintiffs via defendant's toll free Wats line. The remainder were initiated by the defendant and made to the plaintiffs in Alabama. Written correspondence also followed between the parties regarding the transaction upon which they were about to enter. This correspondence came in the form of a letter, telegrams and telexes. Defendant sent four such pieces of written communications to plaintiffs in Alabama.

Plaintiffs allege that an agreement between the parties was eventually reached, the terms of which required delivery of the old aircraft plus a cash sum by plaintiffs in return for which plaintiffs would receive from defendant a newer model of the same aircraft. Plaintiffs further allege that defendant failed to comply with the terms of this agreement. Plaintiffs have now sued defendant for damages resulting from the breach of this agreement.

## CONCLUSIONS OF LAW

Plaintiff Algernon Blair, Inc. is a Delaware corporation, with its principal place of business in Montgomery, Alabama. Plaintiff Castle Construction Company, Inc. is a Delaware corporation with its principal place of business located in Montgomery, Alabama. Defendant Combs–Gates Indianapolis, Inc. is an Indiana corporation with its principal place of business located in Indianapolis, Indiana. The Court has subject matter jurisdiction over this cause by virtue of 28 U.S.C. § 1332(a); i. e., diversity of citizenship between parties and an

amount in controversy exceeding $10,000.00, exclusive of interest and costs.

■ This Court recently surveyed the law of personal jurisdiction in *Communication Equipment and Contracting Co., Inc. v. Municipality of Anchorage, Alaska*, 498 F.Supp. 632 (M.D.Ala.1980). As stated in that opinion, the jurisdiction of Alabama courts over out–of–state defendants is coextensive with the limits of due process under the Fourteenth Amendment to the United States Constitution. *Semo Aviation, Inc. v. Southeastern Airways*, 360 So.2d 936 (Ala.1978); *Schoel v. Sikes Corp.*, 533 F.2d 930 (5th Cir. 1976). The question of due process is a federal question.

■ As has already been stated by numerous courts, the law in this area dictates that the Court consider carefully the facts of each individual case in deciding whether the assertion of personal jurisdiction is consistent with the commands of due process. The Fifth Circuit Court of Appeals has aptly described the inquiry as "a fact sensitive one." *Standard Fittings Co. v. Sapay, S.A.*, No. 77–3486 (Sept. 11, 1980).

A general test has evolved which requires the existence of "minimum contacts" between defendant and forum state. The test also requires an inquiry into the "fairness" of the assertion of jurisdiction over a particular out–of–state defendant. The Fifth Circuit Court of Appeals recently followed this two pronged standard in concluding that the assertion of jurisdiction over an out–of–state defendant satisfied the commands of due process, although the contacts of the defendant with the forum state appear to be substantially less than the contacts in this case.

In *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980), the court heard an appeal from an order by a district court dismissing a cause of action against a foreign defendant for lack of personal jurisdiction. The Court of Appeals reversed.

The defendant in *Oswalt* was a Japanese corporation with its principal place of business in Japan. The Japanese defendant had never had any "office, place of business, servant, employee or director in either the United States or Texas [the forum asserting jurisdiction]." 616 F.2d at 197. Furthermore, there was no evidence that the Japanese defendant had "ever done business in the United States," or with any American companies other than the defendant–third party plaintiff, Scripto, which was a California corporation and did business in Texas and other states through sales to businesses within those states.

The court's finding of personal jurisdiction in *Oswalt* rested on a transaction between the Japanese defendant and Scripto, the third party plaintiff. Specifically, the Japanese corporation sold several million cigarette lighters to Scripto for distribution in the United States. One of these lighters manufactured by the defendant eventually reached Texas where the original plaintiff purchased it and was subsequently injured by what she claimed to be its defective condition. Negotiations for the sale of the lighters were carried out in Japan. The lighters were delivered to the buyer in Japan. There was no showing that the Japanese corporation had actual knowledge that the lighter would be marketed in Texas. Nor was there a showing of any other contacts by the foreign defendant with the State of Texas. Despite this limited involvement of the defendant with the forum asserting jurisdiction, the Court of Appeals found the circumstances sufficient to subject the Japanese corporation to *in personam* jurisdiction.

The court noted that "the ultimate test of *in personam* jurisdiction is 'reasonableness' and 'fairness' and 'traditional notions of fair play and substantial justice.'" 616 F.2d at 200. The court found that such a standard had been met in the case of the Japanese defendant. In reaching this conclusion, the court relied heavily on the most recent jurisdictional decision by the United States Supreme Court, *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct.

559, 62 L.Ed.2d 490 (1980). The court in *Oswalt* found that the Japanese corporation "precisely as the dictum [in *World–Wide Volkswagen*] describes, 'delivered its product into the stream of commerce with the expectation that they will be purchased by consumers in the forum state.'" 616 F.2d at 200. The court concluded that this expectation on the part of the foreign manufacturer made it "reasonable" and "fair" for the defendant to be subject to the jurisdiction of the Texas court.

■ The *Oswalt* decision appears to be decisive of the question of jurisdiction now before this Court. As with the foreign corporation in *Oswalt,* defendant Combs–Gates established a nationwide network for the distribution of its product. As already noted, Combs–Gates ran advertisements in national magazines promoting its services. It procured nationwide Wats line services for the use of its customers. It mailed advertisements to customers in Alabama. It went even further than the *Oswalt* defendant by engaging in direct negotiations with the plaintiffs in this lawsuit. It undertook these negotiations with the knowledge that the plaintiffs are Delaware corporations with their principal places of business in Alabama, and that in all likelihood the airplane in question would be used in Alabama. In short, the conclusion is inescapable that Combs–Gates would have "delivered its product into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."

The Court concludes that the out–of–state defendant does have "minimum contacts" with the forum asserting jurisdiction sufficient to satisfy the requirements of the due process clause. In this case, Combs–Gates engaged in direct mail solicitation of plaintiffs' business; Combs–Gates purchased advertisements in nationally distributed magazines, also directly soliciting the business of parties including plaintiffs; Combs–Gates operates an aircraft parts sales division in Alabama, with a sales representative periodically and regularly making calls on Alabama customers; and finally, Combs–Gates and plaintiffs engaged in month–long negotiations regarding the purchase of a newer airplane by plaintiffs, with defendant initiating much of this negotiation activity.

■ Defendant has argued that its parts sales division is separate from its airplane sales and leasing division and that its sale of parts in Alabama is insignificant in the context of its overall earnings picture. Because of this, defendant urges the Court to ignore this sales activity in reaching its conclusion on the issue of personal jurisdiction. Although the Court does not find the existence of sales activity to be crucial to its decision in this case, it nevertheless is of the opinion that such activity should be considered by a court in considering whether the exercise of *in personam* jurisdiction is consistent with the commands of due process. See, *e. g., International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). ("[T]here have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.")

For all of the above reasons, the Court concludes that defendant's motion to dismiss should be denied. An order will be entered in accordance with this opinion.