William MYERS and Joyce Myers, Plaintiffs,

v.

JOHNS MANVILLE SALES CORPORATION, Fibreboard Corporation, et al., Defendants.

Lester Earl THOMPSON and Loretta Sue Thompson, Plaintiffs,

v.

FIBREBOARD CORPORATION, et al., Defendants.

Robert M. JOHNSON and Linda Johnson, Plaintiffs,

v.

FIBREBOARD CORPORATION (successor to Plant & Rubber Asbestos Company), et al., Defendants.

Joe AZEVEDO and Karen Azevedo, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

Kelton M. REEVES and Marlene Reeves, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

H.K. PORTER COMPANY, INC., a corporation, Cross-Complainant,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Cross-Defendants. (Two Cases)

Robert Vincent AFFLERBACH and Callie Ann Afflerbach, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

Richard Glen OWENS and Peggy Ann Owens, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC. (successor to Armstrong Cork Company), et al., Defendants.

Joe AZEVEDO and Karen Azevedo, Plaintiffs,

v.

KEENE CORPORATION (successor to Baldwin-Ehret-Hill Company, Baldwin-Hill, Inc., Ehret Magnesia Manufacturing Company, Keene Building Products), et al., Defendants.

Jack E. MALLORY and Nenia Mallory, Plaintiffs,

v.

ARMSTRONG WORLD INDUSTRIES, INC., (successor to Armstrong Cork Company), et al., Defendants.

Nos. Civil-LV 82–417, RDF, Civil-LV 82–585, RDF, Civil-LV 83–371, HEC, Civil-LV 83–521, HEC, Civil-LV 83–623, HEC, Civil-LV 83–624, HEC, Civil-LV 83–686, HEC, Civil-LV 84–125, HEC and Civil-LV 84–168, RDF.

United States District Court, D. Nevada.

Oct. 24, 1984.

Russell W. Budd, Frederick M. Baron & Associates, Dallas, Tex., Richard Myers, Crockett & Myers, Las Vegas, Nev., for plaintiffs.

Richard P. Wait, Reno, Nev., for GAF Corp.

Mullally & Cederborg, Oakland, Cal., John Curtas, Las Vegas, Nev., for Keene Corp.

Allison, Brunetti, MacKenzie, Hartman, Soumbeniotis & Russell, Carson City, Nev., for Nicolet, Inc.

Thomas Kummer, Vargas & Bartlett, Las Vegas, Nev., for Owens-Corning Fiberglas Corp.

Marvin Morganstein, Morganstein, Ladd & Jubelirer, San Francisco, Cal., Samuel Lionel, Lionel, Sawyer & Collins, Las Vegas, Nev., for Owens Illinois, Inc.

James Olson, Rawlings, Olson & Cannon, Las Vegas, Nev., for Pittsburgh Corning Corp.

Fred B. Belanger, Kenneth B. Prindle, Kevin Kallberg, Schell & Delmar, Los Angeles, Cal., Kirk Lenhard, Sully & Lenhard, Las Vegas, Nev., for H.K. Porter Co., Inc.

Monique Laxalt Urza, Walther, Key Maupin, Oats, Cox, Lee & Klaich, Reno, Nev., for Raymark Industries, Inc.

David Johnson, O'Brien & Johnson, Las Vegas, Nev., for Standard Insulation.

Neils Pearson, Las Vegas, Nev., for Acands, Inc.

David E. Campana, Morgan, Wenzel & McNicholas, Los Angeles, Cal., Pat Fitzgibbons, Fitzgibbons, Cobb & Morrell, Las Vegas, Nev., Gudmundson, Siggins & Stone, San Francisco, Cal., Evans & Standford, Samuel Lionel, Lionel, Sawyer & Collins, Las Vegas, Nev., for Armstrong World Industries.

B. Alan McKissick, Beckly, Singleton, Delanoy & Jemison, Las Vegas, Nev., for Celotex Corp.

George R. Lyles, Las Vegas, Nev., for Certainteed Corp.

Julian Sourwine, Fahrenkopf-Mortimer, Sourwine, Mousel & Sloane, Reno, Nev., for Combustion Engineering, Inc.

James Shields Beasley, Beasley & Holden, Reno, Nev., for Crown Cork and Seal Co., Inc.

Earl Ayers, Las Vegas, Nev., for Eagle-Picher Industries.

Robert A. McQuaid, Jr., Shamberger, Georgeson, McQuaid & Thompson, Chtd., Reno, Nev., for Fibreboard Corp.

James Pico, Dickerson, Miles, Pico & Mitchell, Las Vegas, Nev., for Forty-Eight Insulations, Inc.

ROGER D. FOLEY, District Judge.

## ORDER–INTRODUCTION

IT IS HEREBY ORDERED that an evidentiary hearing be held on JANUARY 7, 1985, 9:30 A.M. for the purpose of determining the power of this Court to exercise *in personam* jurisdiction over various foreign corporations which are named as defendants in the present action. The following order-memorandum sets forth the law that shall govern the legal issues raised by the various motions to dismiss for lack of personal jurisdiction in the consolidated asbestos-personal injury cases now before this Court. Following a brief factual summary, the law will be addressed under three main classifications: (1) plaintiff's burden of proof; (2) personal jurisdiction under Nevada's long-arm statute; and (3)

Due Process. The parties should prepare and present their evidence of jurisdictional facts in accordance with this order.

## SUMMARY OF THE FACTS

The plaintiffs name multiple corporate defendants in the consolidated personal injury actions now before this Court. The complaints claim relief for negligence, strict products liability, implied warranty and exemplary damages in connection with plaintiffs' alleged prolonged exposure to asbestos and asbestos-containing products. Several of the named defendants have made Motions to Dismiss for Lack of Personal Jurisdiction. These motions are currently under submission.

## PLAINTIFF'S BURDEN TO SHOW THE PRESENCE OF PERSONAL JURISDICTION

■ Prior to trial, a defendant may challenge the court's jurisdiction over the defendant, pursuant to Fed.R.Civ.P. 12(b)(2). The plaintiff bears the burden of establishing that the court has jurisdiction over each defendant. *Pocahontas First Corp. v. Venture Planning Group*, 572 F.Supp. 503, 505 (D.Nev.1983). Because no statute dictates the procedure to be followed in such instances, the trial court is allowed to determine how it will resolve the issue. *Data Disc, Inc. v. Systems Technology Assocs.*, 557 F.2d 1280, 1285 (9th Cir.1977); *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 728–729, 83 L.Ed. 1111 (1939). The plaintiff's burden varies in difficulty according to the limits imposed by the court on the pretrial proceedings.

■ The court has the following procedural options for the resolution of personal jurisdiction questions: (1) determine the matter on the basis of sworn affidavits and a pretrial motion hearing; (2) defer the decision until the parties have conducted discovery of jurisdictional facts and allow both sides a full evidentiary hearing wherein evidence of the jurisdictional facts may be presented;[1] or, (3) if the jurisdictional

---

1. The court may also allow discovery without a subsequent evidentiary hearing, and allow the parties to submit discovered jurisdictional facts in addition to their affidavits. Discovery is

facts are intertwined with the merits, the court may defer a determination of the question until trial on the merits. *Data Disc* at 1285, 1286 n. 2; *Pena v. Valo,* 563 F.Supp. 742, 746 (C.D.Cal.1983).

If the court confines the parties to the use of affidavits alone or with discovery materials, the plaintiff need only make a *prima facie* showing of jurisdictional facts to prevail over a motion to dismiss. *Data Disc* at 1285; *Pena* at 746. In *Data Disc,* Judge Wallace notes that when the parties are limited to such written proof, the defendant could obtain dismissal merely through the production of opposing affidavits if the plaintiff's burden were any greater. *Id.*

■ When the facts alleged in the plaintiff's complaint and supporting affidavits are controverted by the defendant's affidavits, the conflict is resolved in the plaintiff's favor for purposes of establishing a *prima facie* case. *Pocahontas First Corp. v. Venture Planning Group,* 572 F.Supp. 503, 505 (D.Nev.1983). This is not to say that a *prima facie* showing alone guarantees a trial on the merits. If the materials received by the court reveal controverted questions of fact and issues of credibility bearing on the jurisdictional question, the court may, in its discretion, resolve the disputed issues with the aid of additional evidence taken at a preliminary hearing. *Data Disc* at 1285. On such occasions, the plaintiff is required to establish jurisdiction by a *preponderance* of the evidence. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Similarly, if the court elects not to rely on written materials only and determines that the jurisdictional question will not be resolved until trial on the merits, the plaintiff's burden is augmented to a showing by a preponderance of the evidence. *See Pena v. Valo,* 563 F.Supp. at 746. Consequently, until

the eventual pretrial hearing or trial on the merits, a *prima facie* showing suffices. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

■ In the cases at hand, the Motions to Dismiss for lack of *in personam* jurisdiction were submitted for decision on the basis of affidavits and a pretrial motion hearing. When the court chooses to decide the pretrial jurisdiction question on the basis of affidavits, it may also consider the allegations contained in the complaint. *See Pocahontas* at 506; *Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87, 92 (2d Cir.1975). The allegations found in the affidavits and complaint may not be merely conclusory, but must assert particular jurisdictional facts which establish the necessary ties between the defendant and the forum state. *Pocahontas* at 506; *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1208 n. 5 (9th Cir.1980). Accordingly, if the decision were made on the basis of such evidence alone, plaintiffs would merely have to make a *prima facie* showing of personal jurisdiction to prevail over the defendant's motion at this stage of the proceeding.

■ However, because there is a need in the present cases to further develop the jurisdictional facts, a pretrial evidentiary hearing will be held on the question of personal jurisdiction. The parties may then present evidence concerning the Court's exercise of *in personam* jurisdiction over the named defendants. This will enable the Court to make a proper determination of the issue. Because an evidentiary hearing goes beyond a resolution of the question solely on the basis of the parties' pleadings, affidavits and a motion hearing, the plaintiffs must establish jurisdiction by a *preponderance* of the evidence.

properly granted when facts going to the jurisdictional question are disputed or "where a more satisfactory showing of the facts is necessary." *Data Disc* at 1285 n. 1. The court has broad discretion with regard to this procedure and will be reversed only where a denial of

discovery, upon the "clearest showing," results in "actual and substantial prejudice" to the complaining party. *Id. See also Lehigh Valley Industries v. Birenbaum,* 527 F.2d 87, 93 (2d Cir. 1975).

## PERSONAL JURISDICTION

 A federal court accommodating a diversity action has power to assume personal jurisdiction over a nonresident defendant only if: (1) the state has a rule or statute potentially conferring personal jurisdiction over the defendant; and (2) the assertion of such jurisdiction is consistent with principles of due process. *Arrowsmith v. United Press International*, 320 F.2d 219, 222–223 (2d Cir.1963) (en banc). Each element is independent of the other and requires separate consideration. *Data Disc* at 1286. The court should not decide the issue on constitutional grounds without first having treated the sufficiency of the State's jurisdictional statute. *Oswalt v. Scripto Inc.*, 616 F.2d 191, 196 (5th Cir. 1980).

## JURISDICTION UNDER NEVADA'S LONG–ARM STATUTE

 Absent a federal statute or rule that specifically authorizes out-of-state service of process, federal district courts may serve nonresident defendants in accordance with the personal jurisdiction statutes (long-arm statutes) of the state within which the court sits. *See* Fed.R.Civ.P. 4(d)(7), (e); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 414 (9th Cir.1977). In the instant asbestosis actions, the plaintiffs contend that Nevada's products liability long-arm statute—Nev. Rev.Stat. § 14.080 (1983)—authorizes this Court to exercise personal jurisdiction over the named defendants. The relevant portion of § 14.080 provides as follows:

Any company, firm, partnership, corporation or association created and existing under the laws of any other state, territory, foreign government or the Government of the United States, which manufactures, produces, makes, markets or otherwise supplies directly or indirectly any product for distribution, sale or use in this state may be lawfully served with any legal process in any action to recover damages for injury to person or property resulting from such distribution, sale or

use in this state in the manner prescribed in this section.

 This Court is bound by the interpretation given to § 14.080 by the Nevada Supreme Court. *Greenspun v. Del E. Webb Corporation*, 634 F.2d 1204, 1207 (9th Cir.1980). Nevada's high court gave a broad reading to the so-called "one-act" statute in *Metal-Matic, Inc. v. Eighth Judicial District Court of the State of Nevada*, 82 Nev. 263, 415 P.2d 617 (1966). Metal-Matic Inc., a defendant in the case, was a Minnesota corporation that had allegedly manufactured a defective boat railing. A Minnesota boat manufacturer installed and shipped the railing with the boat to a Clark County distributor in Nevada where it was purchased by a consumer. While boating on Lake Mead, the railing allegedly gave way causing the owner's father to fall into the water and drown. Metal-Matic argued that the Nevada courts could not assert personal jurisdiction over it in a law suit brought by the deceased's heirs since it had never directly or indirectly solicited or conducted any business in Nevada.

The Nevada Supreme Court found jurisdiction to be proper and stated that "under N.R.S. 14.080 Nevada may acquire jurisdiction over a foreign manufacturer of a product which it reasonably may expect to enter interstate commerce, which does enter interstate commerce, and because of an alleged defect, causes injury in Nevada to the plaintiff." *Id.* 415 P.2d at 619. The court expressly noted that it was of no consequence that a product may have been purchased from an independent middleman or shipped into the state from one other than the defendant. *Id.*

The court's analysis of constitutional due process issues in *Metal-Matic*—the second of the two considerations reviewed when deciding personal jurisdiction questions—has been qualified by more recent opinions. In *Wilmack, Inc. v. Second Judicial District Court*, 97 Nev. 547, 549, 635 P.2d 296, 297 (1981) the court noted that the *Metal-Matic* opinion's emphasis on forum convenience as the main criterion for asserting personal jurisdiction was improper because

convenience is now only one of the factors to be considered when determining jurisdictional questions. The court in *Wilmack* found § 14.080 did not grant jurisdiction in that case because the plaintiff's injuries were not sustained in Nevada as required by the statute. The court's alternative bases for decision were grounded on federal due process, not on a narrower reading of § 14.080 than was given by the court in *Metal-Matic. Id.*

■ Even if the court in *Wilmack* is seen as having retreated from its earlier position in *Metal-Matic*, it did not withdraw beyond the limits set by federal due process. This conclusion is evident not only from the Nevada Supreme Court's opinions in this area but also in the court's decision to extend other Nevada personal jurisdiction statutes to the limits of constitutional due process. *See Certain-Teed Products Corp. v. Second Judicial District Court*, 87 Nev. 18, 479 P.2d 781 (1971) (the reach of Nev.Rev.Stat. § 14.065 is limited only by the parameters established by the Due Process Clause). *See also Davis v. Eighth Judicial District Court*, 97 Nev. 332, 629 P.2d 1209 (1981), cert. denied, 454 U.S. 1055, 102 S.Ct. 601, 70 L.Ed.2d 591 (1981); *Videotronics, Inc. v. Bend Elec.*, 564 F.Supp. 1471, 1474 (D.Nev.1983). In this regard, federal law is controlling in determining the due process question. *Data Disc* at 1286–1287 n. 3. As a result, this Court is not bound by state law in resolving the instant jurisdictional question.

Once the court determines that the state long-arm statute is limited only by the restrictions of federal due process (or is otherwise applicable to the foreign corporate defendants), it must next determine if the exercise of *in personam* jurisdiction is consistent with principles of constitutional due process. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 786 (9th Cir.1977); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222–223 (2d Cir.1963).

CONSTITUTIONAL DUE PROCESS

In the last four decades the United States Supreme Court has endeavored to define the due process parameters that lim-

it a State's attempts to exercise personal jurisdiction over nonresident defendants. This undertaking began with the seminal decision of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *International Shoe* the Court stated that personal jurisdiction questions are guided by the basic premise that the defendant must have sufficient minimum contacts with the forum state such that the state's assertion of jurisdiction there would be consistent with traditional notions of fair play and substantial justice. *Id.* at 316, 66 S.Ct. 154, at 158, 90 L.Ed. 95.

The decisions immediately following *International Shoe* significantly relaxed the due process restraints placed on the states. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). This trend developed in reaction to the increase in interstate business resulting from advances in transportation and communication technology. *Id.* at 293, 100 S.Ct. at 565. *See also McGee v. International Life Ins. Co.*, 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–201, 2 L.Ed.2d 223 (1957). However, the Court recently reaffirmed that the Due Process Clause imposed restrictions on the exercise of personal jurisdiction that must not be ignored. *World-Wide Volkswagen*, 444 U.S. at 293, 100 S.Ct. at 565.

■ There are two methods of establishing personal jurisdiction. A foreign corporation may be subject to the forum's reach if its activities there are "substantial" or "continuous and systematic," even if these activities do not relate to the cause of action. A foreign corporation with such contacts is said to be already "present" in the forum and thus subject to the state's *general jurisdiction. Data Disc*, 557 F.2d at 1287; *Wells Fargo*, 556 F.2d at 413.

■ When the defendant's activities in the state are insufficient to justify the assertion of general jurisdiction by the forum, the court must analyze the "nature and quality" of the contacts that relate to the cause of action. *Data Disc*, at 1287.

The Ninth Circuit uses three criteria to make this evaluation. When all three have been satisfied, the court may exercise *limited personal jurisdiction.* It is this "limited" jurisdiction that the plaintiffs are attempting to establish in the case at hand. First, the nonresident defendant must do some act or consummate some transaction within the forum or otherwise perform an act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the state's laws. Second, the claim must arise out of or result from the defendant's forum-related activities. Third, the assertion of jurisdiction must be reasonable. *Taubler v. Giraud,* 655 F.2d 991, 993 (9th Cir.1981); *Data Disc,* at 1287, *Pocahonatas First Corp. v. Venture Planning Group, Inc.,* 572 F.Supp. 503, 507 (D.Nev.1983).

A helpful example of the application of the three-part test is provided in *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.,* 633 F.2d 155 (9th Cir.1980). In that case, a Montana fertilizer dealer (Plant Food) ordered several loads of ammonium nitrate from a Washington corporation, Wolfkill Feed & Fertilizer Corp. (Wolfkill), which likewise had to procure the product elsewhere. Wolfkill ordered the product from another company which in turn made an order for the fertilizer with a Canadian corporation—Pillsbury Canada Ltd (Pillsbury). Pillsbury purchased the product with the knowledge that it was destined for Montana. Pillsbury did not manufacture the fertilizer and never had physical possession of the product. As a result of the wrong fertilizer being sent, Plant Food sustained damage to its storage facilities and existing supply of ammonium nitrate. Pillsbury was named as a third-party defendant in an action brought in Montana. *Id.* at 156–157.

The court found that the trial court's exercise of *in personam* jurisdiction over Pillsbury was proper. The court stated that the first two prongs of the limited jurisdiction test were satisfied with Pillsbury's act of causing defective or mislabeled fertilizer to be shipped to Montana.

*Id.* at 159. The court noted that the assertion of personal jurisdiction was reasonable on the basis of "judicial efficiency" and the need to assure consistent results in the interrelated actions that arose as a result of the defective shipment. *Id.*

The court in *Plant Food* relied heavily on the important United States Supreme Court case of *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Court in *World-Wide Volkswagen,* held that Oklahoma's courts could not assert personal jurisdiction against a foreign automobile retailer and a wholesale distributor when the only contact the defendants had with the state was that the plaintiff purchased the allegedly defective car in New York and happened to be involved in an accident while driving the car through Oklahoma. *Id.* The court in *Plant Food* distinguished *World-Wide Volkswagen* on the crucial ground that Pillsbury's knowledge of the product's destiny gave Pillsbury the ability to control its contacts with the forum. *Id.* Unlike the defective automobile in *World-Wide Volkswagen,* the fertilizer did not fortuitously end up in the state but was part of the defendant's conscious efforts to directly or indirectly serve the market of its products. *Plant Food* at 159. Consequently, Pillsbury could reasonably anticipate being haled into court in Montana. *See also Commonwealth of Puerto Rico v. S S Zoe Colocotroni,* 628 F.2d 652, 667–670 (1st Cir.1980) (jurisdiction upheld because insurer knew its insured vessels frequented the waters of the forum state and encouraged such commerce).

The United States Supreme Court has noted that the function of the Due Process Clause with regard to personal jurisdiction is to provide "a degree of predictability to the legal system that allows defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable for suit." *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. If the risk is too great the corporation may choose to sever its connection with the state or provide for

potential lawsuits by procuring insurance or otherwise making the necessary financial preparations. *Id.*

It is important to note that the Court in *World-Wide Volkswagen* recognized a distinction among the different entities involved in the distribution of an allegedly defective product. The two defendants which were found to be beyond the Oklahoma court's jurisdiction were the retail dealer and wholesale distributor; both were near the end of the car's chain of distribution. The market served by these defendants and the benefits recognized by them through the sale of the automobile were within a narrow range of foreseeability. The car's manufacturer and importer, on the other hand, did not contest jurisdiction. The Court implied that jurisdiction over them would have been proper:

> ... [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. A forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297–298, 100 S.Ct. at 567.

A product's manufacturer and primary distributors may be amenable to a forum's jurisdiction even though secondary distributors and retailers as in *World-Wide Volkswagen* are not. In *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1125–1126 (7th Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984), the court noted:

> ... [T]he relevant scope [of foreseeability] is generally broader with respect to manufacturers and primary distributors of products who are at the start of a

distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market. Such manufacturers and distributors purposely conduct their activities to make their product available for purchase in as many forums as possible. For this reason, a manufacturer or primary distributor may be subject to a particular forum's jurisdiction when a secondary distributor and retailer are not, because the manufacturer and primary distributor have intended to serve a broader market and they derive direct benefits from serving that market. [citations omitted].

*See also Cascade Steel Rolling Mills v. C. Itoh and Co. (America) Inc.*, 499 F.Supp. 829, 835 (D.Or.1980).

Because the named defendants in the case at hand are manufacturers of the products that allegedly injured the plaintiffs, the three-pronged test followed in this circuit—*see Data Disc* at 1287—must be applied in light of the "stream of commerce" standard noted in *World-Wide Volkswagen* and the cases that have utilized it.

In *Nelson by Carson v. Park Indus., Inc. (Nelson), supra*, the court properly applied the "stream of commerce" language of *World-Wide Volkswagen*. In that case the plaintiff was burned when a flannel shirt she was wearing ignited after contacting the flame of a cigarette lighter. The shirt was manufactured in Hong Kong by United Garment Manufacturing Company (United). F.W. Woolworth Company (Woolworth) arranged with its purchasing agent Bunnan Tong & Company (Bunnan) to buy the shirts and market them throughout the United States. United and Bunnan were foreign corporations which had never physically been present in the forum state of Wisconsin where the plaintiff purchased the shirt from a Woolworth retail store. There was no direct commercial relationship between United and Woolworth because of Woolworth's use of Bunnan as its intermediary. 717 F.2d at 1122–1123. Because the defendants in *Nelson* were the

manufacturer and primary distributors, the court distinguished *World-Wide Volkswagen* which, as noted above, applied to more distant links in the defective product's distribution chain. *Id.* at 1125–1126. The court found jurisdiction to be proper on the grounds that Bunnan and United—as early actors in the distribution chain—had placed and moved the product in the stream of commerce. *Id.* at 1126. Even though Bunnan did not originate or control the distribution system, they moved the shirts along in commerce for retail sale throughout the United States in Woolworth's retail stores. *Id.* The court noted that the relevant question is whether the defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 1126 n. 7, *citing World-Wide Volkswagen*, 444 U.S. at 298, 100 S.Ct. at 567.

Essential to the court's decision was a finding that the defendants were aware of the national distribution system. As a consequence of that awareness, the defendants indirectly served the national retail market and derived economic benefit therefrom. *Id.* The defendants could then "reasonably anticipate being subject to suit in *any forum* within that market where their product caused injury." *Id.* (Emphasis added). *See also Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir.1980); *Algernon Blair, Inc. v. Combs-Gates Indianapolis, Inc.*, 500 F.Supp. 755 (M.D.Ala.1980); *United States v. Toyota Motor Corp.*, 561 F.Supp. 354 (C.D.Cal.1983); and *DeJames v. Magnificence Carriers, Inc.*, 491 F.Supp. 1276 (D.N.J.1980), cert. denied, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981).

A careful reading of the "stream of commerce" decisions reveals that the manufacturer and primary distributors in those actions had deliberately chosen to market their products in the forum state either directly or indirectly through an interstate distribution system. The courts indicated that the companies had moved their products through the stream of commerce and eventually into the forum state. This was determined by virtue of the defendants' knowing utilization of a distribution network that encompassed the forum—often nation-wide in scope. If a foreign corporation is aware of such a dissemination process it has the ability to control its contacts with the forum. *Plant Food* at 159. As a consequence, when a defendant manufacturer or primary distributor places a defective product into the stream of commerce by means of a distribution scheme that encompasses the forum state and the defendant is aware of this scheme, and if the product causes injury in that state as a result of an alleged defect in the product, the forum state can render a judgment against the corporate defendant entitled to full faith and credit elsewhere.

CONCLUSION

All Parties should be familiar with the law set forth herein and structure their presentations at the forthcoming evidentiary hearing accordingly. Discovery of jurisdictional facts may be conducted prior to the evidentiary hearing. *Sixty days* shall be provided for discovery commencing on the date of this ORDER. Both sides in this matter shall produce all relevant evidence in their possession whether or not it is favorable to them.

Of importance to the Court in resolving this issue will be all evidence bearing on the scope of the distribution schemes utilized by each defendant and its distributors, the means by which the asbestos-containing products in question actually entered Nevada, and the defendants' awareness of the dissemination network for these products. Evidence concerning the products' actual exposure to the various plaintiffs will be required for purposes of the evidentiary hearing. Additionally, evidence regarding other aspects of the present personal jurisdiction question may be offered.