**Al ALI**

v.

**FASTENERS FOR RETAIL, INC., et al.**

**No. CV 07–4009 GPS(JCX).**

United States District Court, E.D. California, Western Division.

April 4, 2008.

Order Granting in Part, Denying in Part, Defendants' Motion to Dismiss

GEORGE P. SCHIAVELLI, District Judge.

On March 24, 2008, the Court heard argument regarding Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). After reviewing the filings, Defendants' Motion is **GRANTED in Part and DENIED in Part.**

## I. BACKGROUND

### A. Factual Background

Al Ali ("Plaintiff") is the inventor and patent owner of the "Smart Pusher" inventory control system technology ("Smart Pusher"). (FAC ¶ 4.) Defendant Fasteners For Retail ("FFR") is a corporation that produces merchandising systems for retailers. Defendant "Cortec Group III, L.P." (hereinafter referred to as "Cortec Group Fund III") is a limited partnership organized under Delaware law, with its principal place of business in New York.[1] Plaintiff alleges that Cortec Group Fund III is a private equity investment firm that acquired all or a majority interest in Defendant FFR. Defendant Cortec Management III, LLC, ("CMG") is

---

**1.** Defendants contend that Cortec Group III, L.P., does not exist. Defendants assume that Plaintiff is referring to Cortec Group Fund III, L.P. (Defs.' Mot. Dismiss 1:1 n. 1).

a limited liability company also organized under Delaware law, with its principal place of business in New York. Plaintiff alleges that CMG acted as a general partner of Cortec Group Fund III.[2] According to Plaintiff, Bruce E. Taylor ("Taylor") was a member and manager of CMG and directed, controlled, authorized, ratified, or approved the wrongful acts of FFR.

Defendant CVS Pharmacy, Inc., is a retail pharmacy chain incorporated in Rhode Island, with its principal place of business in Rhode Island. CVS/Caremark Corporation is a pharmaceutical services company that is incorporated in Delaware, with its principal place of business in Rhode Island. CVS Pharmacy is a wholly-owned subsidiary of CVS/Caremark Corporation (collectively "CVS Defendants").

On or about July 19, 2004, Plaintiff and Defendant FFR entered into a two-year non-disclosure agreement ("NDA I") under which Defendant FFR agreed to keep confidential any information concerning Plaintiff's Smart Pusher technology. On or about November 14, 2004, Plaintiff and Defendant FFR entered into another two-year non-disclosure agreement ("NDA II") under which Plaintiff agreed to keep confidential certain trade secret information disclosed by Defendant FFR in connection with the development and marketing of Smart Pusher technology. Between November 2004 and September 2005, Plaintiff alleges that he and Defendant FFR discussed a joint venture and/or licensing relationship to exploit the Smart Pusher technology and share in the profits and losses. Defendant FFR allegedly provided $30,000 to Plaintiff to develop prototypes of the Smart Pusher and agreed to arrange a meeting with CVS Defendants.

Additionally, during a November 16, 2004 meeting, FFR introduced Plaintiff to

Bruce E. Taylor who held himself out as a "Partner" of "Cortec Group, a venture capital company." (*Id.* ¶ 15.) Upon their introduction, Taylor handed Plaintiff his business card and allegedly informed Plaintiff that Cortec Group had acquired an ownership interest in FFR, was interested in the Smart Pusher technology and wanted to see more information on the technology and product development.

On October 18, 2005, Plaintiff conducted a demonstration of the Smart Pusher technology at FFR's corporate office for CVS Defendants. Plaintiff claims that CVS's executives expressed interest in the technology and indicated that they wanted to install the system in 30 stores.

At the demonstration, Plaintiff alleges that Defendant FFR loaned him a laptop computer to access his emails. From October 18, 2005, through at least December 5, 2005, Plaintiff claims that FFR received copies of all the emails Plaintiff sent or received on this loaned laptop without his knowledge or consent. Plaintiff contends that these emails contained highly confidential information such as software source codes for the Smart Pusher, pricing and cost data and part numbers.

On or about February 9, 2006, Plaintiff alleges that Defendant FFR (with the knowledge and approval of Defendant Cortec Group Fund III and CMG) entered into an agreement with him confirming their working relationship. This working relationship related to the development, supply and sale of an Electronic Self–Facing System, which consisted of Plaintiff's Smart Pusher technology being integrated into FFR's Power Zone System. Plaintiff alleges that FFR and Cortec Group Fund III, through Taylor and FFR's vice president of product development, assured him

---

**2.** The relationship between and among FFR, FFR Holding, Cortec Group Fund III, and CMG is discussed in the personal jurisdiction section, *infra.*

that they would not attempt to design around his patented technology or manufacture or sell a competing product.

On or about February 15, 2006, Plaintiff claims that FFR agreed to and did pay a portion of Plaintiff's legal fees to review a proposed patent licensing agreement. On or about March 8, 2006, Plaintiff and Defendant FFR met with CVS Defendants to discuss the proposed Smart Pusher product and conduct demonstrations. Throughout the next two months, Plaintiff and Defendant FFR negotiated the terms that would provide a more formalized structure for their February 9, 2006 agreement. Plaintiff also alleges that he received $20,000 from Defendant FFR to pay for the development of the Smart Pusher product and some CVS test installations.

On June 29, 2006, Plaintiff met with Defendants FFR and "Cortec" in Ohio and agreed on a term sheet that would be the basis for a formal legal agreement. During the meeting, Taylor allegedly informed Plaintiff that he was authorized to make all final decision on behalf of FFR regarding any agreement concerning the Smart Pusher.[3] (*Id.* ¶ 28.) FFR's Vice President of Product Development Dan Kump had previously confirmed this "information" in an email dated June 20, 2006. (*Id.*; Ex. 5) (writing that "Bruce Taylor, the Cortec person attending the meeting on 6/29 is authorized to make final decisions regarding the agreement.")

On July 9, 2006, Defendant FFR allegedly "decided not to proceed" under this term sheet. (*Id.* ¶ 29.) On July 19, 2006, FFR "decided not to extend" the NDA I. On July 21, 2006, a FFR representative sent an email to Plaintiff stating that FFR had no continuing duty to maintain the confidentiality of information disclosed to

it because the agreement expired. (*Id.* ¶ 31.)

Plaintiff alleges that, on February 12, 2007, he met alone with Jim E. Prewitt and other representatives of CVS Defendants in an attempt to enter into a business relationship. (*Id.* ¶ 32.) At the meeting, Plaintiff claims that he demonstrated the Smart Pusher technology on his laptop. After this demonstration, Plaintiff claims that CVS Defendants requested that Plaintiff leave his laptop computer so they could demonstrate the technology to others. In return, Plaintiff contends that he requested and received assurance that the program would be used for demonstration purposes only and that no proprietary information on the laptop, such as source codes, would be copied by CVS. Based on this assurance, Plaintiff claims that he left his laptop at CVS headquarters with instructions on how to operate the demonstration software.

On February 12–13, 2007, Plaintiff sent Prewitt instructions on running the Smart Pusher demonstration from Plaintiff's laptop computer. On February 16, 2007, upon returning to California, Plaintiff forwarded CVS Defendants a non-disclosure agreement in connection with CVS Defendants' plan to demonstrate the Smart Pusher technology. Plaintiff claims that the Smart Pusher demonstration is run from the program's original source code, and that the instructions did not provide for any files to be copied onto any CD/DVD–ROM. Moreover, Plaintiff claims that the Smart Pusher software program has no built-in CD–ROM burning functionality. Nevertheless, Plaintiff claims that on February 22, 2007, at approximately 5:47 a.m., CVS Defendants accessed and copied two files from Plaintiff's laptop computer to a CD/DVD–ROM. (*Id.* ¶ 37.) Plaintiff asserts that the files contained

---

**3.** Plaintiff does not state whether Taylor was    acting for FFR or Cortec, or both.

proprietary source code information for the Smart Pusher technology developed by Plaintiff.

On February 28, 2007, CVS Defendants returned the laptop computer to Plaintiff. On April 11, 2007, Plaintiff alleges that CVS Defendants informed Plaintiff that it was unable to continue working together due to complaints by Defendant FFR. (*Id.* ¶ 39.)

Plaintiff now seeks recovery under six different claims. Plaintiff's first claim is for breach of fiduciary duty against FFR and Cortec Group Fund III.[4] Plaintiff's second claim is for breach of a non-disclosure agreement against FFR.[5] Plaintiff's fourth claim is for violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030(a)(5)(A), against FFR and CVS Defendants. Plaintiff's fifth claim is for misappropriation of trade secrets, prohibited by California's Uniform Trade Secrets Act (Cal. Civ.Code § 3426, *et seq.*), against FFR and CVS Defendants. Plaintiff's sixth claim is for Interference with Prospective Economic Advantage against Defendant FFR. Plaintiff's seventh claim is for conversion against FFR and CVS Defendants.

**B. Procedural History**

Plaintiff filed the Complaint on June 20, 2007. On September 12, 2007, Defendants filed a Motion to Dismiss the original Complaint. On December 17, 2007, the Court granted in part and denied in part Defendant's Motion to Dismiss. On January 8, 2008, Plaintiff filed his FAC. On February 8, 2008, pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure,[6] Defendants filed this Motion to Dismiss Plaintiff's FAC. On March 24, 2008, the Court heard argument and took the matter under submission.

**II. DISCUSSION**

In their Motion to Dismiss the FAC, Defendants seek to: (A) dismiss Claim I (breach of a fiduciary duty) and Claim VII (conversion) for failure to state a claim, and (B) dismiss all claims against Defendants Cortec Group Fund III and CMG for lack of personal jurisdiction.

**A. Motion to Dismiss under Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). Rule 12(b)(6) requires factual allegations to be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, —— U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). It must state "enough facts to state a claim for relief that is plausible on its face" not just conceivable. *Id.* at 1974.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and construe all inferences from them in the light most favorable to the nonmoving party. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). However, a court need not accept unreasonable infer-

---

**4.** In the FAC, Plaintiff uses the term "Cortec Group" here, which he earlier defined as Cortec Group III, L.P. CMG is not specifically referenced in this claim, the only claim against any Cortec entity.

**5.** In the FAC, Plaintiff has removed his third claim for relief from his original Complaint.

**6.** All rules referred to in this Order are Federal Rules of Civil Procedure unless otherwise noted.

ences or legal conclusions as true merely because they are cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). Dismissal under Rule 12(b)(6) is proper only in extraordinary cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

### 1. Breach of Fiduciary Duty

■ Plaintiff alleges that a fiduciary relationship existed between the parties with respect to the design and development of products utilizing the Smart Pusher technology because Defendants allegedly held a superior bargaining position vis-a-vis Plaintiff and Plaintiff shared confidential information concerning the Smart Pusher technology. Plaintiff alleges that Defendants FFR and Cortec Group Fund III violated their fiduciary duties by secretly developing inventory control technology using information acquired from Plaintiff through the fiduciary relationship. Specifically, Plaintiff claims that during the term of their "joint venture" that FFR and Cortec Group Fund III secretly began negotiating with CVS Defendants to develop, market and sell an electronic sensor system utilizing, at least in part, information acquired from Plaintiff through the fiduciary relationship. (FAC ¶ 47.) At the same time, Plaintiff also claims that FFR and Cortec Group Fund III were secretly taking steps to design around Plaintiff's patent application and develop its own sensor technology to cut Plaintiff out from any business relationship. (*Id.* ¶ 48.)

Defendants argue that (i) the California Uniform Trade Secrets Act ("CUTSA") preempts this breach of fiduciary duty claim and that (ii) Plaintiff fails to sufficiently allege a confidential relationship existed.

#### i. CUTSA Preemption

■ CUTSA "preempts common law claims that 'are based on misappropriation

of a trade secret.'" *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.* 318 F.Supp.2d 216, 219 (D.Del.2004) (citation omitted). "Courts have held that where a claim is based on the 'identical nucleus' of facts as a trade secrets misappropriation claim, it is preempted by [C]UTSA." *Silicon Image, Inc. v. Analogix Semiconductor, Inc.* No. C–07–0635–JCS, 2007 WL 1455903 at *9 (N.D.Cal. 2007) (citing *Digital Envoy, Inc. v. Google, Inc.*, 370 F.Supp.2d 1025, 1033 (N.D.Cal. 2005)).

Plaintiff claims that his fiduciary duty claim is based on much broader spectrum of misconduct than simply misappropriating trade secrets. (Pl.s' Opp'n Mot. Dismiss FAC 7:21–22.) For instance, Plaintiff alleges that Defendant: (1) secretly designed, developed and tested a competing product while the NDA (non-disclosure agreement) was in effect; (2) Defendants also secretly negotiated with CVS to develop and market a competing product in violation of the exclusivity deal reached with Plaintiff; and (3) took affirmative steps to design around Plaintiff's patent in order to cut Plaintiff out from any business relationship. (*Id.* 7:22–27.) Defendants, however, argue that Plaintiff's claim that FFR misused confidential information relies on the same nucleus of facts as set forth by Plaintiff's trade secrets claim. (Defs.' Mot. to Dismiss 8:14–17.)

In construing theses facts in the light most favorable to Plaintiff as required under Rule 12(b)(6), these three facts can form an independent nucleus for a breach of fiduciary duty claim. Moreover, this claim is against Defendant Cortec Group Fund III whereas the misappropriation of trade secrets claim is not. Therefore, a CUTSA preemption finding is premature, at this time.

### ii. Confidential Relationship

■ At oral argument, Plaintiff conceded that his FAC fails to state a claim for a joint venture. Therefore, this Order only addresses whether the FAC sufficiently alleges that a confidential relationship existed.

■ "[A] confidential relationship may exist whenever a person with justification places trust and confidence in the integrity and fidelity of another." *Odorizzi v. Bloomfield Sch. Dist.,* 246 Cal.App.2d 123, 129, 54 Cal.Rptr. 533 (1966) (citations omitted). "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Barbara A. v. John G.,* 145 Cal.App.3d 369, 383, 193 Cal.Rptr. 422 (1983). "The existence of a confidential relationship is generally a question of fact." *Tyler v. Children's Home Soc'y of California,* 29 Cal.App.4th 511, 549, 35 Cal.Rptr.2d 291 (1994). However, "where the allegations of fact, if true, would be legally insufficient to establish a confidential relationship, dismissal is appropriate." *Patriot Scientific Corp. v. Korodi,* 504 F.Supp.2d 952, 966 (S.D.Cal.2007) (citing *Younan v. Equifax Inc.,* 111 Cal.App.3d 498, 169 Cal.Rptr. 478, 517 (1980) ("Plaintiffs allegation that a 'confidential relationship' existed, is nothing more than a conclusion of law and was properly disregarded by the court.")).

Defendants claim that no confidential relationship existed because the facts of this case are more analogous to *Wolf v. Superior Court,* 130 Cal.Rptr.2d 860 (2003). In *Wolf,* the California court found that a fiduciary duty does not arise in agreements that call for "contingent compensation." *Id.* at 864–866. Rather, a contractual right to contingent compensation creates a debtor/creditor relationship, governed by the implied covenant of good faith and fair dealing—not by a fiduciary duty. *Id.*

In contrast, Plaintiff distinguishes his case from *Wolf.* Rather, Plaintiff contends that his case is more akin to *Stevens v. Marco,* 147 Cal.App.2d 357, 305 P.2d 669 (1956). In *Stevens,* the California court found a confidential relationship arose because an investor entrusted his secret idea or device to the attorney and officer of a large corporation under an agreement whereby the corporation agreed to develop, patent and commercially exploit the idea in return for royalties to be paid to the inventor. *Id.* at 373, 305 P.2d 669. The *Stevens* court found all of the classic elements of a confidential relationship existed in this relationship. The defendant owed a duty of utmost confidence because of his superior position to plaintiff, who entrusted him to develop a secret idea, exclusively owned by the plaintiff. *Id.* at 373–74, 305 P.2d 669.

The Court finds the facts of this case fall somewhere in between *Wolf* and *Stevens.* While the negotiations between the parties appear to be at arms' length, Plaintiff did not have counsel and Defendants did have a superior bargaining position, according to the FAC. Moreover, Plaintiff entrusted his proprietary information to Defendants. Therefore, in light of the permissive Rule 12(b)(6) standard that construes facts in favor of the nonmoving party, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Breach of Fiduciary Duty Claim. The Court notes, however, that this claim would most likely fail to survive a motion for summary judgment as currently construed.

### 2. Conversion

■ Plaintiff alleges that Defendants FFR and CVS converted his proprietary property for their own personal use. In

opposition, Defendants argue that (i) CUTSA preempts this claim and (ii) Plaintiff has failed to state an essential element of conversion.

### i. CUTSA Preemption

Specifically, Defendants allege that Plaintiff's conversion claim is preempted by CUTSA because it appears to be based on the same factual allegations as his misappropriation of trade secrets claim. In contrast, Plaintiff claims that CUTSA does not preempt because the conversion claim is broader in scope and relies on different remedies. (Pl's. Opp'n. Mot. Dismiss 9:24–25.) The Court finds that, at this point, it is still unclear how much of the allegedly misappropriated information was a trade secret. Therefore, it would be premature to hold that CUTSA preempts Plaintiff's conversion claim.

### ii. Theft of Intangible Property

■ Defendants argue that Plaintiff failed to allege an essential element of conversion—the theft of tangible property. In *Kremen*, the Ninth Circuit found that the plaintiff had an intangible property right in a domain name and therefore could claim that it was converted. *See Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003). In order to determine whether an intangible property right existed, the *Kremen* Court applied a three part test: (1) there must be an interest capable of precise definition; (2) it must be capable of exclusive possession or control; and (3) the putative owner must have established a legitimate claim to exclusivity. *Id.* at 1030. (citations omitted).

■ Applying this standard, it is clear that Plaintiff has alleged sufficient facts for establishing a right to intangible property that forms the basis of a conversion claim. First, like the domain name in *Kremen*, the information allegedly converted are well defined interests. The source

codes, cost data, and part numbers are not amorphous. They are distinct groupings of proprietary information. *See, generally, G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 903 (9th Cir.1992). Second, ownership is exclusive in that Plaintiff controlled access to the information; only shared the information when it was in his economic interest; and required others, when viewing the information, to sign confidentiality agreements. Third, Plaintiff has a legitimate claim to its exclusivity because he invested a substantial amount of time, effort and resources in compiling the information, marketing it, and keeping it private. This intangible property was allegedly converted when: (1) FFR intercepted Plaintiff's emails that contained software source codes for the Smart Pusher, pricing and cost data, and part numbers; and (2) CVS Defendants' copied proprietary source code for the Smart Pusher by burning a copy onto a CD or DVD–ROM. Therefore, under a Rule 12(b)(6), this claim survives Defendants' Motion to Dismiss.

### B. Motion to Dismiss under Rule 12(b)(2)

Because Plaintiff conceded at oral argument that the Court did not have jurisdiction over CMG, this Order addresses only whether the Court has jurisdiction over Cortec Group Fund III as to the breach of fiduciary duty claim.

■ When a defendant moves to dismiss due to lack of personal jurisdiction, the plaintiff bears the burden of establishing that a federal court has jurisdiction over the defendants. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004). Under California's long-arm statute, the court looks to see whether personal jurisdiction violates the Due Process Clause of the United States. *Id.* at 800–01. The Due Process Clause

prohibits the exercise of personal jurisdiction over a nonresident defendant unless it has "minimum contacts" with the forum state so that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are two types of jurisdiction: general and specific. Plaintiff contends that the Court has specific jurisdiction over the Cortec Group Fund III.

Specific jurisdiction, exists when (1) a defendant's activities are purposefully directed at residents of the forum state, and (2) the claims arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Ninth Circuit applies a three-part test to determine specific jurisdiction. *Schwarzenegger*, 374 F.3d at 802. First, the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum *or resident thereof*, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. *Id.* (emphasis added). Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. *Id.* Finally, the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.[7] The parties only contest the first prong of this test.

Plaintiff argues that the Court can exercise jurisdiction over Cortec Group Fund III because Bruce Taylor was "an employee of Cortec 'who also served as an officer and director of FFR Holding.' " (Pl.'s Opp'n 11:17–25, citations omitted.) Plaintiff contends that Cortec Group Fund III is a majority owner of FFR.[8] (*Id.*) "Thus, Taylor is an agent of FFR and his acts and omissions are binding on the company." (*Id.*) Through Taylor, Plaintiff alleges that the Cortec Group Fund III not only committed the wrongful acts which form the basis of the breach of fiduciary duty claim but also ratified and approved the wrongful conduct by FFR, a party to a contract with Plaintiff (i.e., the Non Disclosure Agreement). (*Id.* at 12:18–22.)

The facts set forth in the briefs and filings are not clear whether Taylor was an agent, either with direct or apparent authority, of Cortec Group Fund III during his contacts with Plaintiff. To clarify, the Court **ORDERS** the parties to conduct limited discovery on personal jurisdiction over Cortec Group Fund III only. *See Data Disc. Inc., v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977) (explaining that because there is no statutory method for resolving personal jurisdiction, the mode of its determination is left to the trial court); *see also Myers v. Johns Manville Sales Corp.*, 600 F.Supp. 977, 980–81 (D.Nev.1984) (listing different procedures for resolving personal jurisdiction issues, such as discovery of jurisdictional facts).

Accordingly, the parties have sixty (60) days to conduct discovery on whether the Court can exercise jurisdiction over the Cortec Group Fund III. After this limited discovery, the Court hereby **ORDERS** the parties to file a supplemental brief, not to exceed five pages, regarding the outcome of discovery by **June 9, 2008**. If neces-

---

7. Plaintiff bears the burden of satisfying the first two prongs of this test. If successful, then the burden shifts to defendant to present a compelling case that exercise of jurisdiction would not be reasonable. *Id.*

8. Defendants state that neither Cortec Group Fund III or CMG own a majority interest in FFR. Rather, Cortec Group Fund "is one of several owners" of FFR Holding, which wholly owns Defendant FFR. (Decl. of Neal Hayes ¶ 13.)

sary, the Court will hold a follow-up hearing on this jurisdictional matter on **June 16, 2008, at 1:30 p.m.**

## III.  CONCLUSION

In light of the analysis above, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's breach of fiduciary duty claim and his conversion claim.  The Court **GRANTS** Defendants' Motion to Dismiss CMG from this action but **ORDERS** the parties to conduct limited discovery regarding whether the Court can exercise jurisdiction over Cortec Group Fund III.

**IT IS SO ORDERED.**